Earle E. aka Earl E. Bramhall
4658 W. 3825 S.
West Valley City, UT  84120
Plaintiff

FILED
U.S. DISTRICT COURT

2019 JUL 10  A 8: 47

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK
RECEIVED CLERK

JUL 0 8 2019

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EARLE E. aka EARL E. BRAMHALL, <br><br> Plaintiff <br><br> vs. <br><br> CYPRUS CREDIT UNION, INC., BROOKE BENNION, SALT LAKE COUNTY DISTRICT ATTORNEY'S, OFFICE, SIMARJIT S. GILL, ROBERT N. PARRISH, MELANIE M. SERASSIO, STEVEN C. GIBBONS, NATHANIEL J. SANDERS, CHRISTINA P. ORTEGA, NATHAN J. EVERSHED, GREGORY N. FERBRACHE, JARED N. PARRISH, CHOU CHOU COLLINS, THOMAS V. LOPRESTO II, CRAIG STANGER, JARED W. RASBAND, <br><br> Defendants | Case No. <br><br> **COMPLAINT** <br> (Civil Rights – Sections 1983/1985) <br><br> (Jury Trial Demanded) <br><br> Case: 2:19-cv-00477 <br> Assigned To : Shelby, Robert J. <br> Assign. Date : 7/8/2019 <br> Description: Bramhall v. Cyprus Credit Union, et al |

## COMPLAINT

COMES NOW Plaintiff Earle E. aka Earl E. Bramhall and complains against defendants, and each of them, as follows:

### I

### INTRODUCTION

Plaintiff Earle E. aka Earl E. Bramhall (hereinafter "Plaintiff Bramhall") had the misfortune to be at the wrong place at the wrong time. He appeared at a telephone booth (since removed) some distance away from one of the branch facilities of defendant Cyprus Credit Union, Inc. (hereinafter "Cyprus") wherein defendant Brooke Bennion (hereinafter "Bennion") was employed, for the purpose of making an international business telephone call, in support of his international business endeavors, at a booth he had often frequented for such purposes, a short drive from his residence.

Unbeknownst to Plaintiff Bramhall, the booth was at that time under police stake-out as the location believed to be where a phone-call had been made to Cyprus earlier that day making a terroristic threat for the criminal purpose of a bank robbery of Cyprus.

Plaintiff Bramhall was arrested and his civil rights violated by officers of the West Valley City police department. Plaintiff Bramhall has since entered into a negotiated, sealed settlement of a prior lawsuit he had lodged against them for those civil rights violations. The actual person who had made the terroristic threat remained at large, though it is believed he was subsequently arrested for similar such conduct thereafter.

Following his arrest, Plaintiff Bramhall was transported to the Salt Lake County jail, where he remained illegally incarcerated, without trial, for nearly five years, violating both the U.S. and Utah constitutional requirements for speedy trials, and Utah statutory law requiring trial within 30 days (or as soon thereafter as allowable by the court's calendar) for defendants unable to post bail (which Plaintiff Bramhall was unable to post, due to the high bail that was set). During that period of illegal incarceration, Plaintiff Bramhall repeatedly requested release, or that he be brought to trial, but all such protests of civil rights violations were instead met with further incarceration, and frequent 'state mental evaluations' to determine his 'fitness for trial', unless he were willing to sign a 'plea agreement' admitting guilt for a crime he had not committed.

This back and forth, of protesting his illegal incarceration, being sent for 'state mental evaluation' and then back into the courtroom with a determination of being mentally fit, occurred approximately a dozen times, over the course of nearly five years, due to his refusal to sign a 'plea agreement' admitting guilt to a crime he did not commit.

Eventually, an *Amicus Curiae* got wind of those shenanigans, filed for *Habeas Corpus*, and Plaintiff Bramhall was forthwith released. He was thereafter brought to jury trial on July 15, 16 and 17, 2017, and found not guilty.

Plaintiff Bramhall now brings this complaint for Section 1983 and Section 1985 violations by the defendants, and for defamation by defendants Bennion and Cyprus.

3

II

## JURISDICTION

Jurisdiction is proper before this court based upon United States Code, Title 42, Section 1985, Conspiracy to Interfere with Civil Rights with respect to all defendants, and United States Code, Title 42, Section 1983, Deprivation of Civil Rights under Color of Authority with respect to all defendants except defendants Cyprus Credit Union, Inc. and Brooke Bennion who are not government agents and did not act under color of governmental authority.

III

## PARTIES

Plaintiff Earle E. aka Earl E. Bramhall at all times herein mentioned, was and is a citizen of the State of Utah and a resident of West Valley City, Utah.

Defendant Cyprus Credit Union, Inc. is a Domestic, Non-Profit Corporation organized under the laws of the State of Utah, Utah Entity Number 558753-0140.

Defendant Brooke Bennion is a resident of Utah and is or was an employee of, and agent for, Cyprus at all times giving rise to the causes of actions complained of herein.

Defendant Salt Lake County District Attorney's Office (hereinafter "District Attorney") is a Utah state governmental agency, operating in Salt Lake County, Utah, and charged with the protection of the rights of persons in Utah. They engage in the

criminal prosecution of individuals for and on behalf of the People of the State of Utah, as well as handling civil governmental legal work and other Utah government litigation.

Defendant Simarjit (Sim) S. Gill (hereinafter "Sim Gill") is and was a resident of Utah and the Chief Prosecutor (District Attorney) in Utah for Salt Lake County.

Defendants Robert N. Parrish, Melanie M. Serassio, Steven C. Gibbons, Nathaniel J. Sanders, Christina P. Ortega, Nathan J. Evershed, Gregorgy N. Ferbrache, Jared N. Parrish, Chou Chou Collins, Thomas V. Lopresto II, Craig Stanger, and Jared W. Rasband are and were residents of Utah and are or were Deputy District Attorneys under the control and authority of Defendant Sim Gill at all times giving rise to the events complained of herein.

The individual defendants of Sim Gill's office are and were agents of each other in furthering the wrongdoings complained of herein.

IV

FIRST CAUSE OF ACTION – VIOLATION OF SECTION 1985

At all times herein mentioned, Defendant Bennion was acting as an agent of, and an employee of, Defendant Cyprus.

Defendant Bennion and her employer Defendant Cyprus engaged in an illegal conspiracy with the other named Defendants, during the period of time of Plaintiff Bramhall's illegal incarceration, to keep him incarcerated without trial by knowingly presenting false and untruthful testimony to those Defendants and others regarding

5

Plaintiff Bramhall, conflating him with the actual individual who engaged in the terroristic threat and attempted theft at Cyprus.

This false testimony by defendant Bennion, while acting as an agent of defendant Cyprus, included false claims to have recognized Plaintiff Bramhall's voice, including false claims to have recognized his voice two years after the attempted theft from Cyprus by that other individual, when she falsely claimed Plaintiff Bramhall had called her again, two years later, even though Plaintiff Bramhall was still incarcerated and unable to telephone out of the jail house facility at that time.

This illegal effort by defendant Bennion, in conspiracy with the other defendants, was designed to keep Plaintiff Bramhall incarcerated as long as possible so that she would not have to deal with the consequences of her earliest false statements.

She, and her employer Cyprus, harmed Plaintiff Bramhall by loss of income and business opportunity, loss of social interaction and consortium, and mental anguish. Plaintiff was harmed by those illegal activities of Defendant Bennion and Defendant Cyprus in conspiring with the District Attorney Defendants to keep Plaintiff Bramhall illegally incarcerated; including loss of then-present and prospective business, loss of other income, loss of friends, etc., and continuing mental anguish, in the sum of $5,000,000.

///

///

V

## SECOND CAUSE OF ACTION - VIOLATION OF SECTION 1983

The District Attorney Defendants (Sim Gill and his Deputy District Attorneys) were agents of each other, and agents of Defendant Salt Lake County District Attorney's Office wherein they were employed with color of state authority.

The District Attorney Defendants, and each of them individually and jointly, prosecuted Plaintiff Bramhall based on their erroneous understanding of facts pertaining to an attempted theft at a Cyprus Credit Union facility, which they garnered from defendants Bennion and Cyprus. The actual acts of the trial court prosecution are not complained of herein, even though some were unlawful, in that Plaintiff Bramhall believes those defendants have a qualified immunity for those unlawful acts; and they likewise resulted in the finding of his innocence by the jury (who did not believe the defendants notwithstanding their unlawful activities at trial).

During the course of their activities prior to their trial court prosecution of Plaintiff Bramhall, they illegally sought to coerce or extract a plea of guilty by him, notwithstanding the fact that they were seeking to try the wrong individual. This illegal coercion consisted of two main parts.

Part 1 – Deprivation of Speedy Trial Right Under Color of Authority

In violation of the U.S. Constitution, the Utah Constitution, and Utah Criminal Procedure, the District Attorney Defendants (Sim Gill and his Deputy District

7

Attorneys) enforced an office policy of denying plaintiff of his right to a speedy trial. Utah law requires a party to be brought to trial within 30 days (or as soon thereafter as possible), if he/she is unable to post bail and he/she does not waive such right.

Plaintiff Bramhall's obvious efforts to obtain a speedy trial, or be released from wrongful incarceration, included his own *pro se* filing of a *Habeas Corpus* petition[1] approximately one year into his five-year illegal incarceration, as well as numerous oral protestations over the course of years that he wanted a trial without further delay. These efforts to obtain a speedy trial were rebuffed by the District Attorney Defendants, each of them individually and jointly, and their office conspiracy to deny such rights to incarcerated individuals, notwithstanding statutory law requiring a trial within 30 days after arraignment whenever a defendant is unable to post bail, unless time is waived.

Instead of the requested speedy trial, Plaintiff Bramhall was illegally incarcerated for nearly 5 years without trial due to said illegal office policy.

To effect that illegal policy, they engaged in extensive unlawful conduct, including repeatedly postponing scheduled trial dates with their requests for 'state mental evaluations' for Plaintiff Bramhall, whenever he was refusing to sign 'plea agreements' which they had prepared for admission of his guilt. This process of requesting 'state mental evaluations' was repeated approximately a dozen times, over

---

[1] This was apparently denied, as it was filed in federal court; then denied under a claim of not exhausting his state court remedies, which remedies were not actually available.

four years, and each time, following weeks of state monitoring and evaluation, Plaintiff Bramhall was declared mentally fit for trial.

He would repeatedly refuse the 'plea agreements'. As that was not the outcome the District Attorney Defendants desired, they would after a brief hiatus make further such requests for 'state mental evaluations'. All together the District Attorney Defendants made approximately a dozen such requests for 'state mental evaluations', over the course of more than four years, keeping Plaintiff Bramhall illegally incarcerated for nearly five years. This policy of keeping a person illegally incarcerated for refusing to sign a 'plea agreement' is outside the scope of the official duties of the Defendants, and is not a protected activity for immunity. Because this was accomplished under color of state authority, a Section 1983 violation is evidenced by those Defendants.

Part 2 – Infliction of Mental Torture Under Color of Authority

Whenever Plaintiff Earl E. Bramhall would overrule a 'plea agreement' offered by the District Attorney Defendants, they would seek and obtain a 'mental evaluation' ostensibly to determine why he was refusing such a purportedly 'valid offer', without ever acknowledging that the refusal was based on his factual innocence. This occurred on approximately a dozen occasions over the course of more than four years, and he was always found mentally competent, and thus available for trial.

These repetitive 'state mental evaluations' would take weeks to accomplish, and not only added to the lengthy illegal incarceration, but caused mental anguish and

anxiety with worry that he might inadvertently be declared mentally incompetent by malevolent actors under control of the District Attorney Defendants.

These repetitive 'state mental evaluations' were part and parcel of an illegal policy by the District Attorney Defendants to bully or otherwise coerce a defendant to accept a 'plea agreement', even when not guilty, under threat of continued lengthy incarceration if inadvertently found 'not competent'.

These illegal activities of the District Attorney Defendants were designed to deprive Plaintiff Bramhall of his civil right to a speedy trial incurring a lengthy incarceration thereby in knowing violation of the constitutional mandates; and to deprive him of his right to incarceration without mental torture.

Plaintiff was harmed by those illegal activities of the District Attorney Defendants, including loss of then-present and prospective business, loss of other income, loss of friends, loss of consortium, etc., and continuing mental anguish, in the sum of $10,000,000.

VI

THIRD CAUSE OF ACTION – DEFAMATION

Defendant Bennion was at all times herein mentioned acting as an agent of Defendant Cyprus, even while not physically located at the Cyprus Credit Union location where she received a terroristic phone call from some other third party.

Notwithstanding that another party made the terroristic threat phone call to Defendant Bennion, at courtroom hearings, she was able to see Plaintiff Bramhall and hear him speak. She thereafter then falsely claimed that she recognized his voice, and two years later, while Plaintiff Bramhall was incarcerated and unable to make telephone calls, falsely claimed that she recognized his voice when another person telephoned her again claiming to be the person who had made the terroristic threat.

During the course of her dealings with the West Valley City Police Department and the District Attorney Defendants, her false claims that she recognized Plaintiff Bramhall's voice to be the same as the person who had made the terroristic threat were knowingly false, defamatory, and designed to keep Plaintiff Bramhall illegally incarcerated (apparently under the mistaken impression that the West Valley Police had arrested the proper person, when they had not).

She, and her employer Cyprus, harmed Plaintiff Bramhall by her false claims to have recognized his voice, by Plaintiff Bramhall's loss of income and business opportunity, loss of social interaction and consortium, and mental anguish. Plaintiff was harmed by those illegal activities of Defendant Bennion and Defendant Cyprus to keep Plaintiff Bramhall illegally incarcerated; including loss of then-present and prospective business, loss of other income, loss of friends, etc., and continuing mental anguish, in the sum of $5,000,000.

VII

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff Bramhall was subjected to nearly five years of illegal incarceration for a crime someone else committed. His civil rights were repeatedly violated, ostensibly on the belief that 'they had their man'. However, there is a reason we don't exact pre-trial punishment – the prosecutors might be wrong. The prosecutors here, even though having the wrong person incarcerated for an attempted theft, sought to exact punishment by depriving Plaintiff of his statutory speedy trial right. This was aggravated by the Cyprus employee Bennion who repeatedly gave false testimony to the prosecutor, working in participation with him to deprive Plaintiff of his rights. Plaintiff Bramhall was seriously injured thereby due to loss of earnings, business potential, social contacts, friends and consortium, as well as mental anguish.

WHEREFORE, it is respectfully prayed that Plaintiff Bramhall be awarded damages in the sum of $20,000,000 plus expenses and interest, and such other and further relief as this Court deems just and proper.

DATED: July 4, 2019

_/s/ Earle E. aka Earl E. Bramhall_
Earle E. aka Earl E. Bramhall