UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EARLE E. BRAMHALL,<br><br>        Plaintiff,<br><br>v.<br><br>CYPRUS CREDIT UNION, INC.;<br>BROOKE BENNION; SALT LAKE<br>COUNTY DISTRICT ATTORNEY'S<br>OFFICE; SIMARJIT S. GILL; ROBERT N.<br>PARRISH; MELANIE M. SERASSIO;<br>STEVEN C. GIBBONS; NATHANIEL J.<br>SANDERS; CHRISTINA P. ORTEGA;<br>NATHAN J. EVERSHED; GREGORY N.<br>FERBRACHE; JARED N. PARRISH;<br>CHOU CHOU COLLINS; THOMAS V.<br>LOPRESTO II; CRAIG STANGER; and<br>JARED W. RASBAND,<br><br>        Defendants. | **REPORT AND RECOMMENDATION TO<br>GRANT MOTIONS TO DISMISS (DOC.<br>NOS. 85 AND 86) AND DISMISS<br>AMENDED COMPLAINT (DOC. NO. 29)<br>WITH PREJUDICE**<br><br>Case No. 2:19-cv-00477-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Pro se Plaintiff Earle E. Bramhall, proceeding *in forma pauperis*, filed this action on July

10, 2019, against two groups of defendants: Cyprus Credit Union, Inc. and its former employee

Brooke Bennion (the "Cyprus Defendants"), and the Salt Lake County District Attorney's Office

and prosecutors Simarjit S. Gill, Robert N. Parrish, Melanie M. Serassio, Steven C. Gibbons,

Nathaniel J. Sanders, Christina P. Ortega, Nathan J. Evershed, Gregory N. Ferbrache, Chou Chou

Collins, Thomas V. Lopresto II, Craig Stanger, and Jared W. Rasband (the "County

Defendants"). (Compl., Doc. No. 3.) Mr. Bramhall later filed an Amended Complaint, which is

the operative complaint in this case. (Am. Compl., Doc. No. 29.) Both groups of defendants

moved to dismiss the Amended Complaint. (Defs. Cyprus Credit Union, Inc. and Brooke

1

Bennion's Mot. to Dismiss Pl.'s First Am. Compl. ("Cyprus Mot. to Dismiss"), Doc. No. 85;

Cnty. Defs.' Mot. to Dismiss Am. Compl. ("Cnty. Mot. to Dismiss"), Doc. No. 86).

Upon review of the Amended Complaint under 28 U.S.C. § 1915(e)(2)(B), as well as the briefing on the motions to dismiss, it is evident Mr. Bramhall's Amended Complaint fails to state a plausible claim for relief against any of the defendants in this action.  Accordingly, as explained below, the undersigned[1] RECOMMENDS the district judge GRANT the motions to dismiss (Doc. Nos. 85 and 86) and DISMISS Mr. Bramhall's Amended Complaint (Doc. No. 29) with prejudice.

## **BACKGROUND AND PROCEDURAL HISTORY**

Mr. Bramhall's claims arise from his arrest and prosecution in Utah state court on charges related to "making a terroristic threat for the criminal purpose of a bank robbery" against Cyprus Credit Union.  (Am. Compl. 2–3, Doc. No. 29.)  Mr. Bramhall alleges he was wrongly identified as the person who called Cyprus Credit Union from a phone booth and made the threat.  (*Id.* at 2.)  He asserts he was illegally incarcerated without trial for nearly five years while prosecutors requested repeated mental health evaluations and pressured him to sign a plea agreement.  (*Id.* at 3.)  He alleges he was eventually brought to trial and was acquitted in 2017. (*Id.*)

This is the second case Mr. Bramhall has filed in this district related to these events.  In 2018, Mr. Bramhall filed a civil rights complaint against the same Cyprus Defendants and

---

[1] District Judge Robert J. Shelby referred this case to Magistrate Judge Cecilia M. Romero pursuant to 28 U.S.C. § 636(b)(1)(B) on August 7, 2019.  (Doc. No. 19.)  After being reassigned to several other magistrate judges, the case was reassigned to the undersigned magistrate judge on June 8, 2020.  (Doc. No. 76.)

prosecutors named in this action,[2] as well as other defendants associated with the West Valley

City Police Department.  (*See Bramhall v. West Valley City Police Dep't* ("*Bramhall I*"), No.

2:18-cv-00438-DB, Doc. No. 4.)  The Cyprus and County Defendants filed respective motions to

dismiss Mr. Bramhall's complaint in that case.  (*Bramhall I*, Doc. Nos. 74 & 93.)  The district

judge granted both motions in February 2019, adopting the findings of the magistrate judge that

Mr. Bramhall's complaint failed to state a claim for relief against those defendants.  (*Bramhall I*,

Order, Doc. No. 130; *see also Bramhall I*, R&Rs, Doc. Nos. 113 & 117.)  Mr. Bramhall moved

for leave to amend his complaint and, while that motion was pending, appealed the order

dismissing his original complaint to the Tenth Circuit.  (*Bramhall I*, Doc. Nos. 132 & 138.)  The

appeal was abated pending resolution of various post-decision motions.  (*Bramhall I*, Doc. Nos.

143 & 144.)  In May 2019, the district court denied Mr. Bramhall's motion to amend his

complaint, finding his proposed amended complaint failed to correct the deficiencies in the

original complaint.  (*Bramhall I*, Doc. No. 145.)  Nevertheless, the court modified its prior order

of dismissal to clarify that Mr. Bramhall's claims were dismissed without prejudice and stated

that he could "still pursue his claims in an appropriate manner if he [was] able to allege sufficient

facts to state a plausible claim for relief."  (*Id.*)  The Tenth Circuit later dismissed Mr.

Bramhall's appeal for lack of jurisdiction in March 2020, finding the district court's order

dismissing Mr. Bramhall's claims without prejudice was not a final order.  (*See Bramhall I*, Doc.

No. 150.)

However, while the appeal in the first case was still pending, Mr. Bramhall filed this

second action in July 2019 against the Cyprus and County Defendants based on the same

---

[2] Mr. Bramhall added the Salt Lake County District Attorney's Office as a new defendant in this
second action.  (Compl., Doc. No. 3.)

underlying events.  (Compl., Doc. No. 3.)  Mr. Bramhall filed the operative Amended Complaint

in September 2019, filing it as a matter of right without the court's leave.  (Am. Compl., Doc.

No. 29.)  The Cyprus and County Defendants filed the pending motions to dismiss the Amended

Complaint in August 2020.  (Doc. Nos. 85 and 86.)  Both motions are now fully briefed.[3]

## LEGAL STANDARD

Whenever the court authorizes a party to proceed *in forma pauperis*, the court may

"dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Dismissal is appropriate when "it is obvious that the plaintiff cannot prevail on the facts [s]he has

alleged and it would be futile to give [her] an opportunity to amend."  *Phillips v. Layden*, 434 F.

App'x 774, 775 (10th Cir. 2011) (unpublished) (alterations in original) (internal quotation marks

omitted).

In determining whether a complaint fails to state a claim for relief under section 1915, the

court employs the standard for analyzing a motion to dismiss for failure to state a claim under

---

[3] Mr. Bramhall's opposition memoranda are signed by Walter L. Wagner, who declares he "provided assistance to [Mr.] Bramhall in drafting" them.  (Opp'n to Cyprus Mot. to Dismiss 19, Doc. No. 87; Opp'n to Cnty. Mot. to Dismiss 26, Doc. No. 88.)  Mr. Wagner is not an attorney admitted to practice in this court, nor has he applied to appear pro hac vice.  Mr. Wagner appeared as amicus curiae and filed memoranda on Mr. Bramhall's behalf in *Bramhall I*.  (*See Bramhall I*, Doc. Nos. 126, 134 & 141.)  On appeal, the Tenth Circuit admonished Mr. Wagner for ghost-writing Mr. Bramhall's briefs, concluding he "improperly provided substantial legal assistance to [a pro se litigant] without entering an appearance." (*Bramhall I*, Doc. No. 151 (alteration in original) (internal quotation marks omitted).)  The Tenth Circuit warned that "this behavior will not be tolerated by this court, and future violations of this admonishment will result in the possible imposition of sanctions."  (*Id.* (citation omitted).)  Although Mr. Wagner again appears to be providing legal assistance to Mr. Bramhall without entering an appearance, because the undersigned recommends dismissal of this action with prejudice, this report does not address this issue further.

Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007). To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). But the court need not accept the plaintiff's conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and further provides that "[e]ach allegation must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks omitted).

A complaint is frivolous where "it lacks an arguable basis either in law or in fact." *Tucker v. U.S. Ct. of App. for the Tenth Cir.*, 815 F. App'x 292, 293 (10th Cir. May 19, 2020) (unpublished) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). This standard applies to

"'claim[s] based on an indisputably meritless legal theory' or 'claims describing fantastic or delusional scenarios.'" *Johnson v. Doe*, 741 F. App'x 573, 576 (10th Cir. July 10, 2018) (unpublished) (alteration in original) (quoting *Neitzke*, 490 U.S. at 327)). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *McEntire v. Federated Inv. Mgmt.*, 510 F. App'x 792, 793 (10th Cir. Feb. 13, 2013) (unpublished) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

Because Mr. Bramhall proceeds pro se, his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. Still, a pro se plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'" *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall*, 935 F.2d at 1110). While the court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" *Hall*, 935 F.2d at 1110, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted).

## DISCUSSION

### I.      Claims Against the Cyprus Defendants

Mr. Bramhall asserts three causes of action against the Cyprus Defendants. (Am. Compl. 5–10, Doc. No. 29.) First, he asserts a claim for violation of 42 U.S.C. § 1985 against Cyprus

and Ms. Bennion, alleging they "engaged in an illegal conspiracy with the other named

Defendants, during the period of time of [Mr.] Bramhall's illegal incarceration, to keep him

incarcerated without trial by knowingly presenting false and untruthful testimony . . . conflating

him with the actual individual who engaged in the terroristic threat and attempted theft at

Cyprus." (Am. Compl. 5–6, Doc. No. 29.) Second, he asserts a claim of negligent hiring against

Cyprus, alleging Cyprus "was negligent in their hiring of [Ms.] Bennion in that they inadequately

reviewed her for honesty, yet placed her in a position where honesty in testimony would

potentially be of importance to Cyprus Credit Union and to the general public." (*Id.* at 7–8.)

Third, he asserts a defamation claim against Ms. Bennion, alleging that during court hearings she

"falsely claimed that she recognized his voice" and falsely identified him as the person who

made the threat to Cyprus. (*Id.* at 8–9.)

      In their motion to dismiss, the Cyprus Defendants contend (1) this second case is

precluded by Mr. Bramhall's prior action, and (2) Mr. Bramhall's Amended Complaint fails to

state a claim for relief against them. (Cyprus Mot. to Dismiss 9–14, Doc. No. 85.) The court

examines each of these arguments in turn.

### A. Preclusion Based on Prior Action

      The Cyprus Defendants argue Mr. Bramhall's second action is precluded by his prior

action based on several theories. First, they argue the second action is an improper attempt to

"circumvent the procedural rules imposed by Judge Benson in the initial lawsuit," citing *Hartsel*

*Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002).

(Cyprus Mot. to Dismiss 9, Doc. No. 85.) In *Hartsel Springs*, the Tenth Circuit addressed a

district court's ability to dismiss a duplicative lawsuit based on the court's equitable power to

7

manage its own docket.  296 F.3d at 985.  The Cyprus Defendants rely on the portion of the opinion stating:

> It is well-settled that a plaintiff may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.  In particular, the court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints.

*Id.* at 990 (internal quotation marks and citations omitted).

Here, Mr. Bramhall filed this second action after the district court denied his motion to amend in the first action, and while his appeal of the order of dismissal was still pending. Nevertheless, the first action was dismissed without prejudice, and the court's order denying his motion to amend permitted Mr. Bramhall to pursue his claims "in an appropriate manner" if he were able state a plausible claim for relief.  (*Bramhall I*, Doc. No. 145.)  That order did not expressly require Mr. Bramhall to amend his complaint in the same case rather than filing a new case.  Moreover, Mr. Bramhall's initial and amended complaints in this second case are not "substantially identical" to either the original complaint in his first case or the proposed amended complaint deemed inadequate in that case.  *See Hartsel Springs*, 296 F.3d at 990.  Rather, Mr. Bramhall added new allegations and claims, presumably in an attempt to correct the deficiencies in his prior complaints.  In other words, he did not circumvent the court's orders in the first case by merely refiling a complaint which had already been deemed inadequate.  Under these circumstances, the record does not support a finding that Mr. Bramhall filed this second action for the purpose of circumventing the court's rules or orders in the first action.

Furthermore, at this stage it would be contrary to the interests of judicial economy to dismiss the Amended Complaint on procedural grounds and require Mr. Bramhall to seek leave to refile it in the first action.  All defendants have moved to dismiss the Amended Complaint

based on failure to state a claim for relief, and those motions are fully briefed and ripe for decision.  Given this procedural posture, it is appropriate to determine the viability of Mr. Bramhall's amended claims rather than requiring Mr. Bramhall to seek leave to amend in the first action.

Next, the Cyprus Defendants argue Mr. Bramhall's second action is barred by the doctrine of claim preclusion.  (Cyprus Mot. to Dismiss 10, Doc. No. 85.)  Claim preclusion applies if three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020) (alteration in original) (internal quotation marks omitted).  "Generally, a dismissal without prejudice does not operate as a final adjudication on the merits and has no claim-preclusive effect on a later suit."  *McNally v. Colo. State Patrol*, 122 F. App'x 899, 902 (10th Cir. 2004) (unpublished) (citing *Santana v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004)).  As set forth above, the dismissal in the first action was without prejudice, and the court expressly stated Mr. Bramhall could continue to pursue his claims.  (*Bramhall I*, Doc. No. 145.)  Accordingly, there was no final judgment on the merits in the first action.  Therefore, the doctrine of claim preclusion does not bar this second action.

Finally, the Cyprus Defendants argue this second action is barred by the doctrine of issue preclusion because the court in the first action "already ruled that Mr. Bramhall's causes of action against [the] Cyprus Defendants are not actionable."  (Cyprus Mot. to Dismiss 10, Doc. No. 85.)  "[I]ssue preclusion bars relitigation of matters actually litigated and adjudged, even if there is no final judgment on the merits."  *McNally*, 122 F. App'x at 902.  However, the court in the first action only determined the complaint *in that action* failed to state a plausible claim for

9

relief.  Mr. Bramhall's Amended Complaint is not identical to his complaint in the prior case and includes new allegations and claims for relief, including a claim under 42 U.S.C. § 1985 and a defamation claim.  The issue of whether this Amended Complaint asserts actionable claims has never previously been adjudicated.  Therefore, issue preclusion does not apply.[4]

For these reasons, Mr. Bramhall's second action is not precluded by the prior action under any of the theories argued by the Cyprus Defendants.

## B.  Failure to State a Claim

Next, the court examines whether Mr. Bramhall's Amended Complaint states a plausible claim for relief in any of the three claims asserted against the Cyprus Defendants.

### 1.  42 U.S.C. § 1985 Claim

To state a claim under 42 U.S.C. § 1985, a plaintiff must allege a conspiracy of two or more persons aimed at either preventing a federal officer from performing her duties (*id.* § 1985(1)); intimidating a party, witness, or juror involved in a case (*id.* § 1985(2)); obstructing justice to deny a person equal protection of the laws (*id.*); or depriving a person of her rights and privileges to deny her equal protection of the laws (*id.* § 1985(3)).  42 U.S.C. § 1985.  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing conspiracy under § 1983).  "Conclusory allegations that the defendants acted in concert or conspired without specific factual allegations to support such

---

[4] The Cyprus Defendants cite *Rose v. Utah State Bar*, No. 2:10-cv-1001, 2010 WL 5187599 (D. Utah Dec. 9, 2010) (unpublished), for the proposition that "asserting new legal theories . . . in a complaint does not allow a plaintiff to file a second (or third) case based upon the same set of facts."  *Id.* at *2.  However, that case is distinguishable because it involved a prior dismissal with prejudice, whereas Mr. Bramhall's first action was dismissed without prejudice.

assertions are insufficient . . . ." *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1248 (D.N.M. 2012).

Section 1985(1)

Mr. Bramhall makes no allegations concerning interference with a federal officer's duties and, therefore, fails to state a claim under section 1985(1).

Section 1985(2)

"Section 1985(2) has two parts: the first part pertains to the administration of justice in the federal judicial system, and the second part relates to 'conspiracies to obstruct the course of justice in state courts.'" *Archuleta*, 898 F. Supp. 2d at 1247 (quoting *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)).

A claim under the first part of section 1985(2) requires three elements: "(1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014). This part applies only to federal judicial proceedings. *See Kush*, 460 U.S. at 724; *Archuleta*, 898 F. Supp. 2d at 1247.

The second part of section 1985(2) "prohibits any conspiracy to obstruct a state judicial proceeding with the intent to deprive another of equal protection of the laws." *Archuleta*, 898 F. Supp. 2d at 1247. "[A] violation of the second part requires a showing that the conspirators intended to deprive the injured party of the equal protection of the laws." *Id.* (citing *Kush*, 460 U.S. at 725.) "The 'equal protection' language included in the second clause of § 1985(2) requires an allegation of class-based animus for the statement of a claim." *Meyers v. E. Okla. Cnty. Tech. Ctr.*, No. CIV-10-1058-F, 2011 U.S. Dist. LEXIS 159055, at *7 (W.D. Okla. Feb. 2,

2011) (unpublished) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Kimball v. D. J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1980)).

Mr. Bramhall alleges Cyprus and Ms. Bennion conspired with the County Defendants "to keep him incarcerated without trial by knowingly presenting false and untruthful testimony" identifying him as the person who made the threat to Cyprus.  (Am. Compl. 5–6, Doc. No. 29.) He alleges the County Defendants knew or should have known early on that Ms. Bennion's testimony was false, but they agreed "to continue to obtain such false testimony . . . for the purpose of maintaining the illegal 5-year pre-trial incarceration of [Mr.] Bramhall with the hope that [he] would accept a plea agreement."  (*Id.* at 6.)

These allegations are insufficient to support a claim under the first part of section 1985(2) because they relate to proceedings in state court rather than federal court.  Furthermore, Mr. Bramhall does not allege "force or intimidation" was used to deter him from appearing in court. Mr. Bramhall merely alleges Ms. Bennion falsely identified him as the perpetrator of the charged crime, and that this false testimony was used to keep him incarcerated prior to trial.  These allegations are also insufficient to state a claim under the second part of section 1985(2) because Mr. Bramhall does not allege any intent to deprive him of equal protection of the laws due to class-based animus.

Section 1985(3)

Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  The conspiracy must be "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]'"  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin*, 403 U.S. at

102); *see also Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980) ("[T]he plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class.").

Mr. Bramhall does not allege he was denied equal protection, privileges, or immunities under the law.  Nor does he allege the claimed conspiracy was motivated by his membership in any protected class.  Therefore, Mr. Bramhall fails to state a claim under section 1985(3).

For these reasons, Mr. Bramhall fails to state a claim against the Cyprus Defendants for a violation of 42 U.S.C. § 1985.

## 2.  Negligent Hiring Claim

To recover under a theory of negligent hiring under Utah law, a "plaintiff must show that [the defendant] had a duty to protect him from harm at the hands of its employees, a negligent breach of that duty, and the harm and damages caused by that breach."  *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 42, 321 P.3d 218, 234 (alteration in original, emphasis omitted) (quoting *J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992)).  Utah courts recognize "a duty of an employer to exercise reasonable care in preventing an employee from acting outside the scope of employment in 'intentionally harming others.'"  *Graves v. N. E. Servs.*, 2015 UT 28, ¶ 33, 345 P.3d 619, 626 (quoting Restatement (Second) of Torts § 317 (1965)).  Under this standard, the plaintiff must show "(a) that the employee who intentionally harms another is on premises he is entitled to enter only by virtue of his status as an employee, and (b) that the employer knows or has reason to know that he has the ability to control the employee and knows or should know of the necessity and opportunity for exercising such control."  *Id.* ¶ 35, 345 P.3d at 627.

Here, Mr. Bramhall claims Cyprus was negligent in hiring Ms. Bennion because they "inadequately reviewed her for honesty, yet placed her in a position where honesty in testimony would potentially be of importance to Cyprus Credit Union and to the general public." (Am. Compl. 7–8, Doc. No. 29.) However, he alleges only that Ms. Bennion gave false testimony during the course of judicial proceedings, not while she was on Cyprus' premises or under Cyprus' control. He does not identify any reason why Cyprus knew or should have known Ms. Bennion would offer false testimony, nor does he allege Cyprus had an ability to control her conduct in judicial proceedings. Indeed, Mr. Bramhall could not plausibly make such allegations. Therefore, Mr. Bramhall fails to state a plausible claim for relief against Cyprus for negligent hiring.

### 3. Defamation Claim

Under Utah law, "false and defamatory statements are not actionable if they are protected by a legal privilege," including the judicial-proceeding privilege. *DeBry v. Godbe*, 1999 UT 111, ¶ 10, 992 P.2d 979, 983. "To establish the judicial proceeding privilege, the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Id.* ¶ 11, 992 P.2d at 983 (internal quotation marks omitted). Utah courts interpret the term "judicial proceeding" broadly, *id.* ¶ 14, 992 P.2d at 983, and extend the privilege to "communications preliminary to a proposed judicial proceeding as well as during the course of or as part of a judicial proceeding," *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997).

Here, Mr. Bramhall alleges Ms. Bennion made false and defamatory statements identifying him as the perpetrator "[d]uring the course of her dealings with the West Valley City

14

Police Department and the District Attorney Defendants." (Am. Compl. 9, Doc. No. 29.) Where, even according to Mr. Bramhall, these witness statements were made in the course of a criminal investigation and prosecution, they fall within the scope of the judicial-proceedings privilege under Utah law. Mr. Bramhall does not allege any defamatory statements by Ms. Bennion outside the scope of these judicial proceedings. Therefore, the defamatory statements alleged in the Amended Complaint are not actionable, and Mr. Bramhall fails to state a claim for defamation against Ms. Bennion.

### C. Conclusion

For the reasons set forth above, Mr. Bramhall's Amended Complaint fails to state a plausible claim for relief against the Cyprus Defendants. Mr. Bramhall has had numerous opportunities to amend his claims against these defendants in both the first action and in this action. Indeed, the Amended Complaint represents Mr. Bramhall's fourth attempt to plead claims against the Cyprus Defendants based on Ms. Bennion's alleged false identification of him. Under these circumstances, it would be futile to grant Mr. Bramhall further opportunities to amend his claims. Therefore, the undersigned RECOMMENDS the district judge GRANT the Cyprus Defendants' motion to dismiss (Doc. No. 85) and DISMISS Mr. Bramhall's claims against the Cyprus Defendants with prejudice.

## II.   Claims Against the County Defendants

Mr. Bramhall asserts claims against the County Defendants under 42 U.S.C. § 1985 and 42 U.S.C. § 1983. (Am. Compl. 5–7, 10–15, Doc. No. 29.) In their motion to dismiss, the County Defendants contend the Amended Complaint fails to state a plausible claim for relief and that they are entitled to prosecutorial immunity for claims asserted against them in their individual capacities. (Cnty. Mot. to Dismiss 1, 8–18, Doc. No. 86.)

### A.  42 U.S.C. § 1985 Claim

As described above, Mr. Bramhall alleges the County Defendants participated in a conspiracy "to keep him incarcerated without trial by knowingly presenting false and untruthful testimony," and that they knew or should have known early on that Ms. Bennion's testimony was false but agreed "to continue to obtain such false testimony . . . for the purpose of maintaining the illegal 5-year pre-trial incarceration of [Mr.] Bramhall with the hope that [he] would accept a plea agreement."  (Am. Compl. 5–6, Doc. No. 29.)

These allegations fail to state a claim under 42 U.S.C. § 1985 against the County Defendants for the same reasons they fail against the Cyprus Defendants.  Specifically, Mr. Bramhall does not allege interference with a federal officer under section 1985(1), use of force or intimidation to deter his attendance in federal court under the first part of section 1985(2), or class-based animus as required under the second part of section 1985(2) and section 1985(3). *See* Section I.B.1, *supra*.  Moreover, he fails to allege specific facts describing how each of the named County Defendants participated in the alleged conspiracy.  His general allegation that the County Defendants collectively conspired to obtain false testimony is insufficient without details regarding each individual's participation.  *See Tonkovich*, 159 F.3d at 533; *Archuleta*, 898 F. Supp. 2d at 1248.

For these reasons, Mr. Bramhall fails to state a claim for relief against the County Defendants under 42 U.S.C. § 1985.

### B.  42 U.S.C. § 1983 Claims

To state a claim under § 1983, "a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law." *Watson v. Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988).

Mr. Bramhall alleges the County Defendants, acting under color of state law, deprived him of his constitutional right to a speedy trial.  (Am. Compl. 10–11, Doc. No. 29.)  He asserts the County Defendants "developed an unconstitutional office policy against all persons charged with a crime of keeping them incarcerated longer than the 30-days authorized by [Utah] statute, whenever they were able to do so."  (*Id.* at 12 (footnote omitted).)  He claims "[t]hey utilized this unconstitutional office policy in an effort to extract plea-agreements" and "would threaten continuing incarceration until they obtained such plea-agreement[s]."  (*Id.*)  According to Mr. Bramhall, the County Defendants "engaged in extensive unlawful conduct" in furtherance of this policy, including "repeatedly postponing scheduled trial dates with their requests for state mental evaluations for [Mr.] Bramhall, whenever he was refusing to sign plea agreements."  (*Id.* at 13 (internal quotation marks omitted).)  He claims this process "was repeated approximately a dozen times, over the course of four years, and each time, following weeks/months of state monitoring and evaluation, [he] was declared mentally fit for trial."  (*Id.* at 13–14.)  As a result, he alleges he "endured nearly five years of illegal incarceration for refusing to plead guilty to a crime he did not commit."  (*Id.* at 12.)  He further claims these actions "deprive[d] him of his right to pre-trial incarceration without mental torture."  (*Id.* at 15.)

The Amended Complaint states the individual prosecutors named as defendants "are sued both in their individual capacities, and as agents of the State of Utah."  (*Id.* at 5.)  However, the Amended Complaint does not state whether the prosecutors are being sued in their official capacities as Salt Lake County officials.  In his opposition to the County Defendants' motion to dismiss, Mr. Bramhall indicates he is suing them only in their individual capacities.  (Opp'n to Cnty. Mot. to Dismiss 20, Doc. No. 88.)  Nevertheless, the court considers whether Mr. Bramhall has stated a claim against the County Defendants in both their individual and official capacities.

In their motion to dismiss, the County Defendants argue the individual-capacity claims against the named prosecutors under section 1983 fail because (1) the Amended Complaint fails to allege an affirmative link between the named prosecutors and the alleged constitutional violation and (2) they are shielded by absolute prosecutorial immunity.  (Cnty. Mot. to Dismiss 11–15, Doc. No. 86.)  The County Defendants also argue any official-capacity claims fail to state a claim for municipal liability under section 1983.  (*Id.* at 15–18.)

### 1.  Individual-Capacity Claims Against the County Defendants

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (alteration in original) (citation omitted).  In cases involving multiple defendants, "[i]t is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (second alteration in original) (citation omitted) (emphasis omitted).

Defendants in an individual-capacity suit can claim personal immunity, including absolute prosecutorial immunity.  *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985); *Imbler v. Pachtman*, 424 U.S. 409, 428 (1976).  "A prosecutor is absolutely immune for activities which are intimately associated with the judicial process such as initiating and pursuing a criminal prosecution."  *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990) (internal quotation marks omitted).  This includes a prosecutor's participation in plea bargaining, *see Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir. 1991), and a prosecutor's decision to request a competency evaluation, *Lessard v. Cravitz*, 686 F. App'x 581, 588 (10th Cir. 2017) (unpublished).

Here, Mr. Bramhall alleges the individual County Defendants postponed scheduled trial dates and repeatedly requested mental competency evaluations in an effort to extract a plea agreement from him.  Seeking continuances, requesting competency evaluations, and plea bargaining are all intimately associated with the judicial process and fall within the scope of prosecutorial duties.  Although Mr. Bramhall asserts these activities resulted in prolonged pretrial detention in violation of his constitutional speedy trial rights, the County Defendants are nevertheless entitled to absolute prosecutorial immunity for these activities.

Mr. Bramhall also alleges the County Defendants' actions were part of an "unconstitutional office policy against all persons charged with a crime of keeping them incarcerated longer than the 30-days authorized by statute."  (Am. Compl. 12, Doc. No. 29.)  As explained in further detail below, Mr. Bramhall does not allege supporting facts sufficient to show the existence of an official policy or custom adopted by the District Attorney's Office. Regardless, he also fails to sufficiently allege the personal involvement of each of the individual County Defendants in promulgating the alleged "office policy."  He alleges in a conclusory fashion that District Attorney Sim Gill was "instrumental in developing the unconstitutional policy," without any supporting factual development.  (*Id.* at 10.)  And he makes no particularized allegations regarding the involvement of any of the other individual County Defendants in developing or maintaining an unconstitutional policy.  He alleges only that those defendants "appeared in the courtroom" in his specific case, (*id.*)—an activity for which they are entitled to prosecutorial immunity.  Under these circumstances, Mr. Bramhall has failed to allege personal involvement of the County Defendants in any activity not covered by absolute prosecutorial immunity.

For these reasons, Mr. Bramhall fails to state an actionable claim under section 1983 against the County Defendants in their individual capacities.

### 2.  Official Capacity Claims and Claims Against Salt Lake County

To the extent the Amended Complaint can be read to assert section 1983 claims against the County Defendants in their official capacities, these are effectively claims against Salt Lake County.  *See Watson*, 857 F.2d at 695 ("A [§ 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citation omitted).  So, too, is Mr. Bramhall's claim against the Salt Lake County District Attorney's Office, as an agency within the Salt Lake County government.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Id.* (quoting *Monell*, 436 U.S. at 694).

"There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury."  *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City*

*of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).  The "municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller*, 932 F.3d at 1283 (internal quotation marks omitted).  A municipal liability claim based on the existence of an informal custom "requires allegations of similar mistreatment of similarly situated individuals within the municipality."  *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1289 (D. Utah 2019) (citing *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)).

Mr. Bramhall's allegations regarding an "office policy" to keep defendants incarcerated beyond the statutory 30-day period in order to extract plea agreements are conclusory and insufficient to state a claim for municipal liability under section 1983.  Mr. Bramhall does not identify any "formal regulation or policy statement" issued by the District Attorney's Office setting out this policy.  *See Waller*, 932 F.3d at 1283.  His allegations are also insufficient to show an informal custom so widespread as to amount to an official policy.  Although he alleges other defendants "would not leave jail until they entered into a plea agreement," (Am. Compl. 12, Doc. No. 29), he provides no supporting facts regarding those individuals' circumstances or the reasons for their detention.  He does not allege any other individuals were subjected to the particular actions he claims were unlawful in his case—namely, the County Defendants' repeated requests for mental health evaluations in order to keep him incarcerated.  Thus, his

allegations are insufficient to show "similar mistreatment of other similarly-situated individuals," as required to establish an informal custom amounting to official policy. *Hunt*, 372 F. Supp. 3d at 1289. Likewise, the Amended Complaint contains no allegations regarding decisions of policymakers or inadequate training or supervision. Accordingly, the allegations in the Amended Complaint are insufficient to show the existence of an official policy or custom as required to state a claim for municipal liability under section 1983.

For these reasons, Mr. Bramhall fails to state a claim for relief under section 1983 against the individual County Defendants in their official capacities or against the Salt Lake County District Attorney's Office.

## C. Conclusion

As set forth above, Mr. Bramhall's Amended Complaint fails to state a plausible claim for relief against the County Defendants. Mr. Bramhall has had numerous opportunities to amend his claims against these defendants in both the first action and in this action, and the Amended Complaint represents his fourth attempt to plead claims against the County Defendants based on his pretrial incarceration. Under these circumstances, it would be futile to grant Mr. Bramhall further opportunities to amend his claims. This court echoes the court's observation in in Mr. Bramhall's first action (*Bramhall I*, Doc. No. 130): although he has alleged an unfortunate set of facts, the statutes he relies upon do not allow recovery in every circumstance, and the doctrine of prosecutorial immunity may "leave the genuinely wronged defendant without civil redress." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). Therefore, the undersigned RECOMMENDS the district judge GRANT the County Defendants' motion to dismiss (Doc. No. 86) and DISMISS Mr. Bramhall's claims against the County Defendants with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the undersigned RECOMMENDS the district judge GRANT the motions to dismiss (Doc. Nos. 85 and 86) and DISMISS this action with prejudice.

The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object to the same. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 25th day of January, 2021.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge