IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EARLE E. BRAMHALL,<br><br>Plaintiff,<br><br>v.<br><br>CYPRUS CREDIT UNION, INC., et al.,<br><br>Defendants. | **ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**<br><br>Case No.: 2:19-cv-00477-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

This case arises out of the five-year state court pretrial incarceration of Plaintiff Earle E. Bramhall, following criminal charges filed against him in Salt Lake County, Utah for making a terroristic threat for the criminal purpose of bank robbery. Bramhall eventually stood trial and was acquitted by a jury. He now brings this action against Defendants Cyprus Credit Union and Brooke Bennion (collectively, Cyprus Defendants); and the Salt Lake County District Attorney's Office, District Attorney Simarjit S. Gill, Robert N. Parrish, Melanie M. Serassio, Steven C. Gibbons, Nathanial J. Sanders, Nathan J. Evershed, Chou Chou Collins, Thomas V. Lopresto II, Craig Stanger, and Jared W. Rasband (collectively, County Defendants). After the Cyprus and County Defendants moved to dismiss his original Complaint, Bramhall filed his Amended Complaint asserting claims for violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as claims for negligent hiring and defamation.

The Cyprus Defendants filed a Motion to Dismiss Bramhall's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] The County

---

[1] Dkt. 85 (Defendants Cyprus and Brooke Bennion's Motion to Dismiss).

Defendants filed a separate Rule 12(b)(6) Motion to Dismiss the Amended Complaint.[2]
Bramhall opposed both motions.[3]

Acting pursuant to a referral under 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Daphne Oberg took up the motions and, on January 25, 2021, issued a Report and Recommendation in which she recommended the undersigned grant the Defendants' motions and dismiss Bramhall's Amended Complaint with prejudice.[4]  Bramhall timely filed an Objection.[5]  For the reasons explained below, Bramhall's Objection is SUSTAINED IN PART and OVERRULED IN PART. The Cyprus Defendants' Motion to Dismiss[6] is GRANTED, and the County Defendants' Motion to Dismiss[7] is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[8]

In July 2008, Bramhall made a business-related international call in a telephone booth outside of Cyprus Credit Union in Utah.[9]  Unfortunately for Bramhall, the booth was under police surveillance because someone else using it earlier that day called Cyprus Credit Union and made terroristic threats "for the criminal purpose of a bank robbery[.]"[10]  Defendant Bennion,

---

[2] Dkt. 86 (Motion to Dismiss filed by Defendants Chou Chou Collins, Nathan J. Evershed, Steven C. Gibbons, Simarjit S. Gill, Thomas V. Lopresto, II, Robert N. Parrish, Jared W. Rasband, Salt Lake County District Attorney's Office, Nathaniel J. Sanders, Melanie M. Serassio, Craig Stanger).  Defendants Christina P. Ortega, Gregory N. Ferbrache, and Jared N. Parrish, while named in the Amended Complaint as current or former Deputy District Attorneys, have been dismissed for improper service.  *See* Dkt. 100.

[3] Dkt. 87; Dkt. 88.

[4] Dkt. 94 (Report and Recommendation).

[5] Dkt. 95 (Objection).

[6] Dkt. 85.

[7] Dkt. 86.

[8] Because this case is before the court on an objection to a Report and Recommendation deciding a motion to dismiss, the court accepts as true all well-pleaded factual allegations contained in the Amended Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9] Dkt. 29 at 2.

[10] *Id.*

who was an employee of Cyprus Credit Union at the time, identified Bramhall's voice to the police as the one who made the terroristic threat earlier in the day.[11]  Bramhall was arrested and remained incarcerated awaiting trial for five years.[12]

During his pre-trial incarceration, Bramhall repeatedly requested release or trial.[13] Instead of setting a date for trial, Bramhall alleges various deputy district attorneys employed by Salt Lake County would offer him plea agreements.[14]  When he refused to sign those agreements, the deputy district attorneys would allegedly request a "state mental evaluation" from the court to determine his fitness for trial.[15]  Once he was deemed fit for trial, the cycle would repeat itself with a deputy district attorney again offering a plea agreement instead of setting a trial date as Bramhall requested.  Bramhall alleges this cycle occurred approximately a dozen times over his five-year pretrial incarceration.[16]  Bramhall finally stood trial on July 15, 2017, and was acquitted by a state court jury.[17]

Bramhall alleges District Attorney Gill was involved in this pretrial cycle of detainment by either "developing the unconstitutional policy . . . of keeping individuals charged with a crime incarcerated as long as possible, and in violation of speedy trial rights, so as to exert pressure on those individuals to accept plea agreements; or he was grossly negligent in allowing such policy to develop while those deputies were under his supervision."[18]

---

[11] *Id.* at 9.

[12] *Id.* at 3.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 10–11.

On June 8, 2018, Bramhall filed in this court a different civil rights action, *Bramhall I*, against the same Cyprus Defendants and prosecutors named in this action, as well as other defendants associated with the West Valley City Police Department.[19]  In that case, Bramhall alleged the County Defendants committed prosecutorial misconduct, subjected him to cruel and unusual punishment, violated his Fifth Amendment rights by failing to indict him before a grand jury, conspired to prosecute him despite a lack of evidence, attempted to coerce him into pleading guilty, denied his right to a speedy trial, improperly subjected him to numerous competency evaluations, and improperly allowed a witness to remain in the courtroom during a preliminary hearing.[20]  As to the Cyprus Defendants, Bramhall brought claims for violation of 42 U.S.C. § 1983; negligent hiring, supervision, or retention; and a claim of perjury against Defendant Bennion.[21]

After Bramhall voluntarily dismissed the West Valley City Police Department Defendants, the court in *Bramhall I* adopted a Magistrate Judge's Report and Recommendation to dismiss each claim and grant the Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[22]  On May 2, 2019, the court clarified that Bramhall's claims were dismissed without prejudice and notified him that he "may still pursue his claims in an appropriate manner if he is able to allege sufficient facts to state a plausible claim for relief."[23] However, in the same Order, the court denied Bramhall's Motion to Amend his Complaint because it concluded "allowing [Bramhall] to file his proposed Amended Complaint would be

---

[19] *Bramhall v. West Valley City Police Dep't*, No. 2:18-cv-00438-DB at Dkt. 4.

[20] *Id.* at 28–30.

[21] *Id.*, Dkt. 117 (Report and Recommendation regarding Cyprus Defendants) at 7–8.

[22] *Id.*, Dkt. 130 (Order adopting Report and Recommendation re: Dkt. 117).

[23] *Id.*, Dkt. 145 at 2.

4

futile[.]"[24]  Bramhall appealed that Order dismissing his claims to the Tenth Circuit Court of Appeals.[25]  On March 26, 2020, the Tenth Circuit dismissed the appeal for lack of appellate jurisdiction after concluding the District Court Judge's Order was not final.[26]

Rather than seek leave to file an amended complaint in *Bramhall I*, on July 10, 2019, Bramhall filed the instant action against the same Cyprus Defendants and County Defendants.[27] Each group of Defendants filed Motions to Dismiss in August of 2019.[28]  Soon thereafter, on September 9, 2019, Bramhall filed the governing Amended Complaint.[29]  In it, Bramhall brings three causes of action against the Cyprus Defendants for: (1) violating 42 U.S.C. § 1985, (2) negligent hiring, and (3) defamation.[30]  Bramhall also brings two causes of action against the County Defendants, for violating: (1) 42 U.S.C. § 1985, and (2) 42 U.S.C. § 1983.[31]

On August 17, 2020, the Cyprus Defendants moved to dismiss the Amended Complaint.[32]  They first argue Bramhall's instant action is precluded by *Bramhall I*.[33]  Next, the Cyprus Defendants contend the Amended Complaint fails to state a claim upon which relief may be granted under any of the three causes of action asserted against them.[34]  The County

---

[24] *Id.*

[25] *Id.*, Dkt. 143.

[26] *Id.*, Dkt. 150.

[27] Dkt. 3 (Original Complaint).

[28] Dkt. 23 (Cyprus' Motion to Dismiss Complaint); Dkt. 26 (County Defendants' Motion to Dismiss Complaint).

[29] Dkt. 29 (Amended Complaint).

[30] *Id.* at 5–10.

[31] *Id.* at 5, 10–15.

[32] Dkt. 85.

[33] *Id.* at 9.

[34] *Id.* at 10.

Defendants also moved to dismiss the Amended Complaint, arguing it fails to state a claim against them under either 42 U.S.C. § 1985 or § 1983.[35]

On January 25, 2021, Judge Oberg issued a Report and Recommendation recommending dismissal with prejudice of Bramhall's claims against both the Cyprus and County Defendants.[36] Judge Oberg first concluded that this action is not precluded by *Bramhall I* because that case did not result in a final judgment on the merits or "actually litigate[]" the issues presented in this action.[37]  Turning to the other arguments presented, Judge Oberg concluded Bramhall failed to state a claim against the Cyprus Defendants for any of the three claims asserted against them in the Amended Complaint.[38]  Judge Oberg concluded Bramhall's claim under 42 U.S.C. § 1985 failed because Bramhall did not "allege any intent to deprive him of equal protection of the laws due to class-based animus."[39]  Judge Oberg next concluded Bramhall's claim for negligent hiring must be dismissed in part because he failed to allege "any reason why Cyprus knew or should have known Ms. Bennion would offer false testimony[.]"[40]  Last, Judge Oberg recommended dismissing Bramhall's claim for defamation against the Cyprus Defendants because the alleged statements made by Bennion are protected by the judicial proceedings privilege.[41]

As to the County Defendants, Judge Oberg concluded Bramhall failed to state a claim under either 42 U.S.C. § 1985 or § 1983.[42]  As with Bramhall's claim under 42 U.S.C. § 1985

---

[35] Dkt. 86 at 8, 11.

[36] Dkt. 94.

[37] *Id.* at 9–10.

[38] *Id.* at 10.

[39] *Id.* at 12–13.

[40] *Id.* at 14.

[41] *Id.* at 15.

[42] *Id.*

against the Cyprus Defendants, Judge Oberg recommended dismissal because the Amended

Complaint lacked any allegations of the County Defendants' intent to deprive him of equal

protection based on class-based discrimination.[43]  Finally, Judge Oberg concluded Bramhall's

claim under 42 U.S.C. § 1983 must be dismissed against the County Defendants in both their

individual and official capacities.  She concluded the § 1983 claim must be dismissed against the

County Defendants in their individual capacities for two reasons: (1) the allegations in the

Amended Complaint are not sufficiently specific, and (2) the actions alleged are barred by

prosecutorial immunity.[44]  Judge Oberg concluded Bramhall's § 1983 claim must be dismissed

against the County Defendants in their official capacities because he failed to allege any

"municipal policy or custom" as required to state a claim for county liability.[45]

On February 5, 2021, Bramhall timely objected to each conclusion in the Report and

Recommendation, except those regarding preclusion and municipal liability under § 1983.[46]  In

his Objection, Bramhall also seemingly accuses Judge Oberg of judicial misconduct.  These

accusations stem from Judge Oberg's disagreement with his legal arguments.  Based on Judge

Oberg's conclusions in the Report and Recommendation, Bramhall contends that the

disagreement was motivated by some improper motive.[47]  Bramhall's accusations go beyond

attempting to demonstrate error.  Instead, he insists any error made in the Report and

---

[43] *Id.* at 16.

[44] *Id.* at 19.

[45] *Id.* at 21.

[46] *See* Dkt. 95.  After invitation by the court, the Cyprus Defendants responded to Bramhall's Objection on September 29, 2021.  Dkt. 101.

[47] *Id.* at 3, 5–9, 14.

Recommendation was intentional and resulted from bias.[48] He offers no support for these accusations of misconduct beyond the fact that Judge Oberg's conclusions were adverse to him.

## Legal Standard

Under Rule 72(b)(3), when a party objects to a magistrate judge's recommended disposition, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."[49] To qualify as a proper objection that triggers de novo review, the objection must be both timely and specific.[50] Indeed, "only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act[.]"[51] Thus, de novo review is not required where a party advances objections to a magistrate judge's disposition that are either indecipherable or overly general.[52] Concerning unobjected-to portions of a report and recommendation, the Supreme Court has suggested no further review by the district court is

---

[48] *Id.*

[49] Fed. R. Civ. P. 72(b)(3); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citations omitted).

[50] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[W]e hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

[51] *Id.*

[52] *See id.* ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.") (citation omitted); *see also Moore v. Astrue*, 491 F. App'x 921, 922 (10th Cir. 2012) (upholding district court's clear error review of magistrate judge's report and recommendation because Plaintiffs objected only "generally to every finding" in the report).

8

required, but neither is it precluded.[53]   This court reviews unobjected-to portions of a report and recommendation for clear error.[54]

Bramhall is a pro se litigant.  Pro se litigants are held to less stringent standards than parties formally represented by lawyers,[55] and their filings are "to be liberally construed."[56]  A litigant's pro se status, however, "does not excuse the obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure."[57]  Further, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."[58]

## ANALYSIS

The court reviews the Report and Recommendation in two steps.  First, the court will review de novo the conclusions to which Bramhall has specifically objected.  Second, the court will review the remainder for clear error.  Last, the court addresses Walter L. Wagner's involvement in Bramhall's filings and Bramhall's inappropriate and unfounded personal attacks on Judge Oberg in his Objection.

---

[53] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("The [Federal Magistrate's Act] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* at 154 (noting that "it is the district court, not the court of appeals, that must exercise supervision over the magistrate," so that "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard").

[54] *See, e.g., Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made [to a magistrate judge's report and recommendation], the district court judge reviews those unobjected portions for clear error.") (citations omitted); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing *Campbell v. U.S. Dist. Court for N. Dist. Of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879 (1974)).

[55] *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

[56] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotation marks omitted).

[57] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994).

[58] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I.      **Motions to Dismiss**

The Cyprus and County Defendants each filed Motions to Dismiss under Federal Rule of

Civil Procedure 12(b)(6), arguing Bramhall's Amended Complaint fails to state a claim upon

which relief may be granted.[59]  Judge Oberg agreed, recommending the undersigned dismiss

each claim asserted in the Amended Complaint.[60]

To survive a motion to dismiss, a complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."[61]  A complaint does not need detailed

factual allegations, but it must "contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face."[62]  A claim is plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."[63]  In reviewing the motion, the court accepts "the well-pleaded

allegations of the complaint as true" and draws all reasonable inferences in favor of the

plaintiff.[64]  However, the court will not accept as true "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."[65]

Bramhall specifically objects to the conclusions in the Report and Recommendation that

he has failed to state a claim for each of his four causes of action: (1) under 42 U.S.C. § 1983

against the County Defendants, (2) 42 U.S.C. § 1985 against both the County and Cyprus

---

[59] Dkt. 85; Dkt. 86.

[60] *See* Dkt. 94 at 23.

[61] Fed. R. Civ. P. 8(a).

[62] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[63] *Id.*

[64] *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 881 (10th Cir. 2005).

[65] *Iqbal*, 556 U.S. at 678.

Defendants, and his claims against the Cyprus Defendants for (3) negligent hiring, and (4) defamation.[66]  The court addresses each in turn.

**a.      42 U.S.C. § 1983**

Bramhall asserts one cause of action under 42 U.S.C. § 1983 against the Salt Lake County District Attorney's Office, District Attorney Simarjit Gill, and the individually named deputy district attorneys.[67]  He asserts the individually named deputy district attorneys and Gill violated Bramhall's right to a speedy trial guaranteed by the United States Constitution and Utah Constitution.[68]

The County Defendants argue Bramhall failed to state a claim under § 1983 for three reasons.  First, they contend Bramhall's Amended Complaint lacks allegations linking any individual Defendant to any specific action depriving Bramhall of his speedy trial rights.[69] Second, the County Defendants argue absolute prosecutorial immunity shields the individually named deputy district attorney Defendants.[70]  Last, the County Defendants maintain the Amended Complaint lacks any allegations of a formal or informal policy for municipal liability.[71]

Judge Oberg agreed with the County Defendants, concluding Bramhall failed to state a § 1983 claim against them in their individual or official capacities.[72]  Bramhall now objects only to the conclusion that his Amended Complaint fails to state a claim for the deputy district

---

[66] Dkt. 95 at 7–19.

[67] Dkt. 29 at 10.

[68] *Id.* at 11.

[69] Dkt. 86 at 11.

[70] *Id.* at 13.

[71] *Id.* at 15.

[72] Dkt. 94 at 20.

attorneys' individual liability under § 1983.[73]  Specifically, he takes issue with the requirement

that he plead a § 1983 claim with specificity as to each Defendant's alleged actions, and argues

the actions alleged are not covered by prosecutorial immunity.[74]  The court addresses each

argument in turn.

### 1.      Individual Allegations

The County Defendants contend Bramhall failed to adequately allege a § 1983 claim

against them in their individual capacities because he has not alleged an "affirmative link"

between the individuals' actions and his alleged speedy trial right deprivation.[75]  Under § 1983, a

plaintiff must allege they were "denied a federal, constitutional, or statutory right under color of

state law, custom, or usage."[76]  The elements necessary to establish whether a plaintiff was

denied any such right "will vary with the constitutional provision at issue."[77]  One common

element, however, is "that liability be predicated on a violation traceable to a defendant-official's

own individual actions."[78]

Because this lawsuit "involve[es] multiple defendants . . . [i]t is particularly important

that [Bramhall] make clear exactly *who* is alleged to have done *what* to *whom*, . . . as

distinguished from collective allegations."[79]  To adequately allege a claim under § 1983 against

individual defendants, "it is incumbent upon a plaintiff to identify *specific* actions taken by

---

[73] *See* Dkt. 95 at 7–14.

[74] *Id.*

[75] Dkt. 86 at 11.

[76] *Wright v. No Skiter Inc.*, 774 F.2d 422, 424 (10th Cir. 1985) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)).

[77] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (citations omitted).

[78] *Id.* (internal quotation marks and citation omitted).

[79] *Id.* (internal quotation marks omitted) (emphasis in original).

*particular* defendants[.]"[80]  This is because "[i]n the context of § 1983 claims, which 'typically include complex claims against multiple defendants,' it is particularly important that a complaint provide sufficient notice to individual government actors to allow them to prepare a defense."[81]  The "failure to satisfy this requirement will trigger swift and certain dismissal."[82]

Bramhall has failed to allege any specific action taken by any named deputy district attorney defendant.  He alleges "[t]he named District Attorney Defendants, except Defendant Gill, all appeared in the courtroom concurrently with Plaintiff Bramhall for the furtherance of their deprivation of . . . his right to a speedy trial."[83]  He fails to distinguish between any individual deputy district attorney when alleging "each of them individually and jointly, prosecuted [] Bramhall based on their erroneous understanding of facts."[84]  He continues to allege "[d]uring the course of their activities prior to their trial court prosecution of [] Bramhall, they illegally sought to coerce or extract a plea of guilty by him, notwithstanding the fact that they were seeking to try the wrong individual."[85]  These allegations, even with the additional detailed allegations of the purported plan used against Bramhall to keep him incarcerated without a trial, do not identify any specific action taken by any specific deputy district attorney.[86]  Without these allegations, the Amended Complaint fails to state a claim under 42 U.S.C. § 1983 for any of the deputy district attorneys.

---

[80] *Id.* at 1226 (internal quotation marks and citations omitted) (emphasis in original).

[81] *Glaser v. City & Cty. of Denver, Colo.*, 557 Fed. App'x 689, 702 (10th Cir. 2014) (unpublished) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

[82] *Estate of Roemer v. Johnson*, 764 Fed. App'x 784, 790 n.5 (10th Cir. 2019) (unpublished) (citations omitted).

[83] Dkt. 29 at 10.

[84] *Id.* at 11.

[85] *Id.*

[86] *See id.* at 10–15.

This leaves District Attorney Gill as the only remaining County Defendant against whom Bramhall's § 1983 claim may survive.  Bramhall alleges Gill "enforced an office policy of denying plaintiff of his right to a speedy trial."[87]  Specifically, Bramhall alleges Gill "was instrumental in developing the unconstitutional policy . . . of keeping individuals charged with a crime incarcerated as long as possible, and in violation of speedy trial rights, so as to exert pressure on those individuals to accept plea agreements."[88]  In the alternative, Bramhall alleges Gill "was grossly negligent in allowing such policy to develop while those Deputies were under his supervision."[89]

These allegations distinguish Gill, and his alleged actions, from the other County Defendants.  Bramhall has alleged specific actions taken by Gill that he contends deprived him of his speedy trial rights.  That is, that Gill developed the alleged policy that deprived Bramhall of a speedy trial, or negligently allowed the policy to develop.[90]  This allegation is specific enough at this stage to provide Gill with notice of his alleged actions to allow him to prepare a defense.[91]

In their papers, the County Defendants do not distinguish Bramhall's specific allegations concerning Gill from the generalized arguments made concerning the deputy district attorneys.[92]  Nor do they attempt to make any argument that the specific allegations Bramhall does make concerning Gill are insufficient to provide Gill with adequate notice to prepare his defense.

---

[87] *Id.* at 11.

[88] *Id.* at 10–11.

[89] *Id.*

[90] *Id.*

[91] *Glaser*, 557 Fed. App'x at 702 (quoting *Kan. Penn Gaming*, 656 F.3d at 1215).

[92] *See* Dkt. 86 at 11–12; Dkt. 91 at 6–7.

Although the allegations contained in the Amended Complaint concerning Gill are brief, they provide enough factual allegations to move beyond "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[93]  And without a compelling argument to the contrary from the County Defendants, Bramhall's § 1983 claim includes sufficiently alleged specific actions taken by Gill "as distinguished from collective actions" to state a claim for relief.[94]

### 2.      Prosecutorial Immunity

The County Defendants also argue Bramhall has failed to state a claim under § 1983 because the claim is barred by prosecutorial immunity.[95]  "It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial . . . process,' such as initiating and pursuing criminal prosecutions."[96]  A prosecutor's "[a]bsolute immunity does not extend to actions that are primarily investigative or administrative in nature, though it may attach even to such administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court."[97]  Investigative and administrative acts by a prosecutor "are accorded qualified immunity." [98]

In distinguishing between "prosecutorial and nonprosecutorial investigative and administrative activities, the determinative factor is 'advocacy' because that is the prosecutor's

---

[93] *See Iqbal*, 556 U.S. at 678.

[94] *See Pahls*, 718 F.3d at 1225–26.

[95] Dkt. 86 at 13.

[96] *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir.1990)).

[97] *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (internal quotation marks and citations omitted).

[98] *Id.* at 908–09.

main function and the one most akin to his quasi-judicial role."[99]  The Tenth Circuit has identified the following principle to guide courts in drawing this distinction: "The more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach."[100]  As the "official[s] seeking absolute immunity" the County Defendants "bear[] the burden of showing that such immunity is justified for the function in question."[101]

Having already found the § 1983 claim fails as to the other County Defendants, the question here is whether the County Defendants have demonstrated Defendant Gill's allegedly improper actions are "intimately associated" with the judicial proceeding such that absolute, rather than qualified, immunity applies.[102]  Again, Bramhall alleges Gill "was instrumental in developing the unconstitutional policy . . . of keeping individuals charged with a crime incarcerated as long as possible, and in violation of speedy trial rights, so as to exert pressure on those individuals to accept plea agreements; or he was grossly negligent in allowing such policy to develop while those Deputies were under his supervision."[103]

Defendant Gill correctly argues participating in plea bargaining and mental competency hearings are actions "intimately associated" with the judicial process and are protected by absolute immunity.[104]  However, Bramhall does not allege Defendant Gill participated in his

---

[99] *Pfeiffer*, 929 F.2d at 1489 (internal quotation marks and citation omitted).

[100] *Scott*, 216 F.3d at 908 (citations omitted).

[101] *Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1038 (D. Colo. 2009) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)) (internal brackets and quotation marks omitted).

[102] *Scott*, 216 F.3d at 909 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)).

[103] Dkt. 29 at 10–11.

[104] Dkt. 86 at 14 (citing *Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir. 1991) (applying absolute immunity to 'agreement' analogous to a plea bargain); *Pfeiffer*, 929 F.2d at 1492 (applying absolute immunity to prosecutors engaging in coercive plea bargaining); *Scott*, 216 F.3d at 908-10 (applying absolute immunity to prosecutor's

prosecution, plea bargaining, or mental competency hearings.[105]  Instead, Bramhall alleges Gill developed a policy, or allowed a policy to develop, that deprived him of his speedy trial rights.[106] Defendant Gill does not argue whether the development of the alleged policy is "intimately associated" with the judicial proceedings.[107]  Without such an argument, the court cannot conclude Defendant Gill has met his burden of showing absolute prosecutorial "immunity is justified" for Bramhall's specific allegations against him.

Accordingly, the court sustains Bramhall's Objection and denies the County Defendants' Motion to Dismiss Bramhall's § 1983 claim against Defendant Gill.  The court concludes Judge Oberg appropriately recommended dismissal of Bramhall's § 1983 claim as to all other Defendants.  Bramhall's Objection is therefore overruled as to all other County Defendants.

### b.      42 U.S.C. § 1985

Bramhall brings a claim under 42 U.S.C. § 1985(2) against both the Cyprus and County Defendants.[108]  The pertinent provision of § 1985(2) provides for the recovery of damages:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws[.][109]

A valid claim under this Section requires a plaintiff to "allege a racial or class-based invidious discriminatory animus [by] the defendants."[110]  "The other 'class-based animus' language of this

---

actions in civil commitment proceedings); *Lessard v. Cravtiz*, 686 Fed. App'x 581, 588-89 (10th Cir. 2017) (unpublished) (applying absolute immunity to competency evaluation).

[105] Dkt. 29 at 10.

[106] *Id.* at 10–11.

[107] *See* Dkt. 86 at 13–14.

[108] *See* Dkt. 95 at 14, 16.

[109] 42 U.S.C. § 1985(2).

[110] *Dees v. Wilson*, 13 F.3d 405 (10th Cir. 1993) (unpublished) (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429-30 (8th Cir.1986); *Santistevan v. Loveridge*, 732 F.2d 116, 119 (10th Cir.1984) (McKay, J., concurring) (stating that the "*Griffin v. Breckenridge* rule

requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias."[111]

Bramhall does not allege any "racial, or . . . otherwise class-based" discriminatory animus behind either the Cyprus or County Defendants' actions.  In his Objection, Bramhall first mistakenly argues he is not required to allege any class-based animus to state a claim under § 1985(2).[112]  Second, he argues "it is both articulated and self-evident that the animus on the part of the defendants extended to all persons who are in jail."[113]  In opposing the County Defendants' Motion to Dismiss, Bramhall described the class for his § 1985 claim as "that class of defendants who are unable to post a high bail."[114]  But these allegations are not in the Amended Complaint.[115]  Even if they were, persons in pretrial incarceration and unable to pay bail are not a protected class § 1985 was enacted to protect because it has been narrowly construed to exclude liability based on economic bias.[116]  Bramhall's Amended Complaint fails to allege that a discriminatory animus against any racial, or otherwise protected class, was the basis for either the Cyprus or County Defendants' conspiratorial actions.  Without these allegations, Judge Oberg appropriately concluded Bramhall's § 1985 claim must be dismissed. Bramhall's Objection is overruled as to his § 1985 claim.

---

[which requires the element of racial or class-based animus] applies only to the last half of section 1985(2) and all of section 1985(3)")).

[111] *Tilton*, 6 F.3d at 686. (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983)).

[112] Dkt. 95 at 15.

[113] *Id.* at 18; *see also* Dkt. 88 (Bramhall's Opposition to County Defendants' Motion to Dismiss) at 11 (describing the class-based animus as against "defendants who were unable to post a high bail").

[114] Dkt. 88 at 3.

[115] *See* Dkt. 29.

[116] *See Tilton*, 6 F.3d at 686 (noting it is a close question whether liability under § 1985 extends to any other class-based animus beyond racial animus).

c.       **Negligent Hiring**

Bramhall brings a negligent hiring claim against the Cyprus Defendants.  To state a claim

for negligent hiring under Utah law, Bramhall must allege Cyprus "had a duty to protect him

from harm at the hands of its employees, a negligent breach of that duty, and the harm and

damages caused by that breach."[117]  A duty may arise in the context of negligent hiring "when an

employer could reasonably be expected, consistent with the practical realities of an employer-

employee relationship, to appreciate the threat to a plaintiff of its employee's actions and to act

to minimize or protect against that threat."[118]

Bramhall alleges simply that Cyprus:

> was negligent in their hiring of defendant Bennion in that they inadequately
> reviewed her for honesty, yet placed her in a position where honesty in testimony
> would potentially be of importance to Cyprus Credit Union and to the general
> public.  They failed to determine whether she was suitable for the position for
> which she was retained.[119]

Bramhall has failed to allege that Cyprus Credit Union had a duty arising from its hiring

of Bennion to protect the public from her providing false testimony in connection with a criminal

investigation and prosecution.  Bramhall has not asserted any facts to support a reasonable

inference that Cyprus Credit Union should reasonably have been expected to appreciate the

threat of Bennion's allegedly false testimony in connection with the investigation and

prosecution of a member of the public, "consistent with the practical realities of [their]

employer-employee relationship[.]"[120]  The Amended Complaint does not contain any factual

---

[117] *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 42, 321 P.3d 218 (quoting *J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992)) (other citations omitted).

[118] *Id.* ¶ 42 (citing *Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995)) (emphasis omitted).

[119] Dkt. 29 at 7–8.

[120] *Castellanos*, 2014 UT App 48, ¶ 42 (citing *Jackson*, 891 P.2d at 1392) (emphasis omitted).

allegations that the threat of its employees providing false testimony against members of the public was known to Cyprus Credit Union or consistent with the practical realities of a bank-bank teller employer-employee relationship.  The Amended Complaint does not include any factual allegations "or reasonable inferences that can be drawn to suggest that [Cyprus Credit Union] had failed to protect other individuals" from any other employee's false testimony in the past.[121]  Nor are there any allegations that Cyprus knew or had reason to know that Bennion had an alleged propensity to offer false testimony.[122]  Moreover, the Amended Complaint lacks any allegation that Bennion had "done or said anything prior to [providing allegedly false testimony] that would have put [Cyprus Credit Union] on notice that she had a propensity to commit such acts[.]"[123]  Without these factual allegations, Bramhall's Amended Complaint fails to allege Cyprus Credit Union had a duty to protect Bramhall from Bennion's allegedly false testimony.  Judge Oberg correctly concluded Bramhall's negligent hiring claim against the Cyprus Defendants should be dismissed.

### d.    Defamation

Bramhall also brings a defamation claim against the Cyprus Defendants based on Bennion's testimony against him.[124]  The Cyprus Defendants challenge Bramhall's defamation claim only based on the judicial proceedings privilege.[125]  In her Recommendation, Judge Oberg

---

[121] *See Jensen v. Gale*, No. 1:13-cv-00030-DN, 2014 WL 7246948, at *6 (D. Utah Dec. 18, 2014) (quoting *J.H. By and Through D.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992)).

[122] *Castellanos*, 2014 UT App 48, ¶ 42 (explaining that a duty may arise for an employer "when an employer could reasonably be expected . . . to appreciate the threat to a plaintiff of its employee's actions").

[123] *Jensen*, 2014 WL 7246948, at *6 (quoting *J.H.*, 840 P.2d at 124).

[124] Dkt. 29 at 8–9.

[125] Dkt. 85 at 13.

agreed with the Cyprus Defendants, concluding the alleged statements upon which Bramhall bases his defamation claim fall within the scope of the judicial proceedings privilege.[126]

Under Utah law, "false and defamatory statements are not actionable if they are protected by a legal privilege."[127]   The judicial proceedings privilege is a common law privilege "intended to promote the integrity of the adjudicatory proceeding and its truth finding process."[128]   There are three elements to determine whether the judicial proceedings privilege applies to an allegedly defamatory statement: "(1) [t]he statement must have been made during or in the course of a judicial proceeding; (2) the statement must have some reference to the subject matter of the proceeding; and (3) the statement must have been made by someone acting in the capacity of judge, juror, witness, litigant, or counsel."[129]

Bramhall objects to Judge Oberg's conclusion, arguing the judicial proceedings privilege does not apply to Bennion's statements because they were "made outside of the courtroom."[130]   Bramhall's argument concerning the privilege under Utah law is partially correct, if incomplete. Undoubtedly, the privilege cannot reach all statements made concerning a judicial proceeding or preliminary to a judicial proceeding.   Rather, the privilege applies only to statements made "during or in the course of a judicial proceeding."[131]   Utah has interpreted this first prong broadly, applying the privilege "to every step in the proceeding until final disposition, including certain pretrial and posttrial statements."[132]   In other words, this requirement looks to the

---

[126] Dkt. 94 at 14–15.

[127] *DeBry v. Godbe*, 1999 UT 111, ¶ 10, 992 P.2d 979.

[128] *Id.*

[129] *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997).

[130] Dkt. 95 at 19.

[131] *Price*, 949 P.2d at 1256.

[132] *Pratt v. Nelson*, 2007 UT 41, ¶ 29, 164 P.3d 366.

statement's proximity to the judicial proceeding at issue.  Statements may satisfy the first prong

of the judicial proceedings privilege "even if the communication is preliminary to a proposed

judicial proceeding."[133]  This includes preliminary statements made in "conferences and other

communications preliminary thereto" as well as "all pleadings and affidavits necessary to set the

judicial machinery in motion."[134]  It is clear that many statements made "outside a courtroom"

may fall within the scope of the privilege.

Regardless, Bramhall fails in his Objection to identify any statement made by Bennion

outside the course of his state criminal judicial proceeding.  Nor can the court identify one after

carefully scrutinizing his Amended Complaint.  The court is mindful that in *Bramhall I*,

Bramhall alleged Bennion made statements to the West Valley City Police Department during its

investigation of the terroristic telephone call made to Cyprus Credit Union.[135]  And here,

Bramhall generally alleges Bennion made false statements "[d]uring the course of her dealings

with the West Valley City Police Department."[136]  But the court may not consider the pleadings

in *Bramhall I*, and Bramhall identifies in his Amended Complaint in this case no specific

statement Bennion made to the West Valley City Police Department or anyone else prior to his

initiation of his state criminal proceeding.

Instead, when referring to Bennion's alleged statements he describes her as being "at

courtroom hearings."[137]  Bramhall alleges that at those hearings, Bennion "claimed that she

recognized his voice, and two years later, while [] Bramhall was incarcerated and unable to make

---

[133] *Id.* (internal quotation marks and citations omitted).

[134] *Id.* ¶ 29 n.48 (quoting *Beezley v. Hansen*, 286 P.2d 1057, 1058 (1955)).

[135] *See Bramhall I*, Dkt. 4 (Complaint) at 17.

[136] Dkt. 29 at 9.

[137] *Id.* at 8.

telephone calls, falsely claimed that she recognized his voice when another person telephoned

her again claiming to be the person who had made the terroristic threat."[138]  Bramhall alleges

Bennion made these statements "to keep [Bramhall] illegally incarcerated[.]"[139]  Bennion's

statements, Bramhall alleges, "placed him in a false light and made it more likely for the District

Attorney defendants to fail to honor [his] right to a speedy trial, or pre-release[.]"[140]  Taken

together, and drawing reasonable inferences in his favor, these allegations can only be read to

describe statements made by Bennion after Bramhall's incarceration and during, or in the course

of, his state criminal judicial proceeding.

In his Amended Complaint, Bramhall also purports to incorporate into his defamation

claim the allegations set out in his first cause of action, asserting a claim arising under 42 U.S.C.

§ 1985.[141]  But, like his defamation cause of action, his first cause of action also fails to identify

any statements made outside of a judicial proceeding.  In his first cause of action, Bramhall

alleges the Cyprus Defendants conspired "to keep him incarcerated without trial by knowingly

presenting false and untruthful testimony to those Defendants and others regarding [] Bramhall,

conflating him with the actual individual who engaged in the terroristic threat and attempted theft

at Cyprus."[142]  Throughout his § 1985 claim, Bramhall describes Bennion's statement that she

recognized his voice as "false testimony" given for the purpose "of maintaining the illegal 5-year

pre-trial incarceration of [] Bramhall[.]"[143]  Even incorporating these additional allegations into

---

[138] *Id.* at 8–9.

[139] *Id.* at 9, 10 (alleging three separate times that Bennion's statements were made to "keep" him incarcerated).

[140] *Id.* at 10.

[141] *Id.* at 8.

[142] *Id.* at 5–6.

[143] *Id.* at 6.

his defamation claim,[144] Bramhall identifies no statement made outside of a judicial proceeding.

Nor may the court modify Bramhall's pleading by writing into his Amended Complaint missing

allegations about statements that may fall outside the judicial proceedings privilege.  In short, the

court may not assume the role of advocate, even for a pro se litigant.[145]

The facts alleged in Bramhall's Amended Complaint appear to be based on Bennion's

statements made during his state criminal judicial proceedings.  Without Bramhall identifying in

his Amended Complaint any statement allegedly made by Bennion outside of this context, the

judicial proceedings privilege applies to bar his claim.  Judge Oberg correctly concluded

Bramhall's defamation claim against the Cyprus Defendants should be dismissed.

---

[144] To state a claim for defamation under Utah law, a claimant must allege "(1) that [the] [d]efendant[] published the statements in question; (2) that the statements were false; (3) that the statements were not subject to any privilege; (4) that the statements were published with the requisite degree of fault; and (5) that the statements resulted in damages."  *Davidson v. Baird*, 2019 UT App 8, ¶ 25, 438 P.3d 928, *cert. denied*, 440 P.3d 692 (Utah 2019) (citing *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535).  A statement is defamatory if it "impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994).  Statements of "pure opinion" cannot meet this standard "because such statements are incapable of being verified and therefore cannot serve as the basis for defamation liability."  *Davidson*, 2019 UT App 8, ¶ 31 (quoting *West*, 872 P.2d at 1015) (internal quotation marks omitted).  Moreover, for a statement to be defamatory, it must be capable of being proved materially false.  *See id.* ¶ 34 (citing *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011)).  To determine whether the statements in question are actionable, the court "of course need[s] to know what those statements are." *Id.* ¶ 27. Here, Bramhall fails to specifically identify the allegedly defamatory statements.  *See* Dkt. 29 at 6, 8–9.  Based on the general allegations concerning the allegedly defamatory statements, the court is unable to assess whether Bennion's statements are actionable, e.g., whether they are statements of fact or opinion, or whether they are verifiable.  Beyond failing to state a claim under Utah law, the absence of this required specificity means he also fails to plead a plausible defamation claim under the pleading standards required by *Iqbal*.  *See*, 556 U.S. 662, 678 (2009).  Without more, the generalized allegations of defamatory statements in Bramhall's Amended Complaint do not plead enough "factual content that allows the court to draw the reasonable inference that [the Cyprus Defendants] [are] liable for the misconduct alleged." *Id.*; *see, e.g.*, *Rader v. Electronic Payment Systems, LLC*, No. 11-cv-01482-MSK-CBS, 2012 WL 4336175, at *6–7 (D. Colo. Sept. 21, 2012) (noting "in absence of a clear description (preferably an outright quotation) of the allegedly defamatory statement, [the claimant] has not plead a 'plausible' libel claim under the pleading standards set out in *Iqbal*.").

[145] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

II.     **The Remainder of the Report and Recommendation**

Having reviewed the remainder of the Report and Recommendation, the court finds no clear error in any of Judge Oberg's unobjected-to conclusions concerning municipal liability or preclusion by *Bramhall I*.

III.    **Outstanding Issues**

Before concluding, it is necessary to address two issues that pervade Bramhall's Objection: (1) his purported assistance of an "amicus curiae," Walter L. Wagner; and (2) the Objection's unsupported and inappropriate allegations concerning Judge Oberg.

In *Bramhall I*, the Tenth Circuit admonished Wagner for "ghost writing" Bramhall's appellate brief,[146] as "ghostwritten" appellate briefs are not allowed.[147]  Instead, an attorney's participation in drafting an appellate brief "must be disclosed to the court" and "acknowledged by the signature of the attorney involved."[148]  This is because providing "substantial legal assistance to [a pro se litigant] without entering an appearance in [a] case not only affords [the pro se litigant] the benefit of the court's liberal construction of pro se pleadings, but also inappropriately shields [the attorney] from responsibility and accountability for his actions and counsel."[149]

On appeal, Wagner did not seek "leave from [the] court to appear as an amicus curiae but [was] served with all appellate filings."[150]  The Tenth Circuit also noted Wagner "did not sign

---

[146] *See Bramhall I*, 2:18-cv-00438-DB, Dkt. 151.

[147] *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir. 2001).

[148] *Id.* at 1273.

[149] *Id.* at 1271–72.

[150] *See Bramhall I*, 2:18-cv-00438-DB, Dkt. 149 at 2.

Bramhall's appellate briefs."[151]  After comparing Bramhall's appellate briefs to "Wagner's filings in district court and considering the nature of Wagner's involvement in the district court proceeding and the present appeal," the court concluded "it appears [] Wagner may have ghost-written Bramhall's appellate briefs."[152]  The Tenth Circuit then ordered Bramhall "to show cause why [the] court should not order sanctions on the basis that his appellate briefs were drafted in whole or in substantial part by Wagner."[153]  The court also encouraged Wagner to respond to the Order to Show Cause.[154]

Both Bramhall and Wagner filed responses to the Tenth Circuit's Order to Show Cause. In his response, Bramhall explained he has never paid Wagner "for any 'information' Wagner provided."[155]  He maintained he regards Wagner "only as a mentor" rather than "his legal counsel."[156]  Bramhall also explained he was aware that "Wagner 'is not a licensed attorney in any state,' and he 'has received information from Mr. Wagner only when [he] makes inquiries to Mr. Wagner on specific matters."[157]  Similarly, in Wagner's Response, Wagner explained he never received compensation from Bramhall and that he is not a licensed attorney.[158]  Wagner's legal experience is limited to working "with the federal Centers for Medicare and Medicaid," and "taking a Bar examination in California in the 1970s."[159]

---

[151] *Id.*

[152] *Id.*

[153] *Id.* at 3.

[154] *Id.*

[155] *Id.*, Dkt. 151 at 2.

[156] *Id.*

[157] *Id.*

[158] *Id.* at 2–3.

[159] *Bramhall I*, Appeal Case No. 19-4032 (Wagner's Response to the Tenth Circuit's Order to Show Cause) at 2.

Based on the responses to the court's Order to Show Cause, and after reviewing the filings in *Bramhall I* and subsequent appeal, the Tenth Circuit concluded "Wagner [] improperly provided 'substantial legal assistance to a pro se litigant without entering an appearance.'"[160] The court admonished Wagner "that this behavior will not be tolerated by [the Tenth Circuit], and future violations of th[e] admonition will result in the possible imposition of sanctions."[161]

The filings in the current action suggest Wagner continues to provide substantial assistance to Bramhall.[162]  Indeed, in his Opposition to the County Defendants' Motion to Dismiss, Bramhall acknowledged the assistance of Wagner will likely result in the court reviewing his pleadings and arguments as a represented party rather than construing them liberally as the court must for pro se plaintiffs.[163]  The Tenth Circuit has cautioned, however, "that the mere assistance of drafting, especially before a trial court, will not totally obviate some kind of lenient treatment due a substantially pro se litigant."[164]  Lenient treatment continues to appear appropriate in this case because Wagner is not a licensed attorney.[165]  Where Bramhall has not been provided the assistance of counsel, the court continues to construe his filings liberally under a pro se standard.[166]  Although the court applies the pro se standard to Bramhall's filings, Wagner's assistance raises other issues.

---

[160] *Id.* at 3 (internal brackets and citation omitted).

[161] *Id.*

[162] *See* Dkt. 87 (Bramhall's Opposition to Cyprus Defendants' Motion to Dismiss) at 19; Dkt. 88 (Bramhall's Opposition to County Defendants' Motion to Dismiss) at 9 n.5, 26 (noting "[s]ince Plaintiff Bramhall has assistance from an *Amicus Curiae* that the 10th Circuit has denoted as a lawyer (even though not admitted as a member of the Utah bar association), th[e] lesser standard [applied to pro se filings] is likely not applicable."); Dkt. 95 (Bramhall's Objection) at 21.

[163] Dkt. 88 at 9 n.5.

[164] *Duran*, 238 F.3d at 1273.

[165] *See Bramhall I*, 2:18-cv-00438-DB, Dkt. 151 at 2–3.

[166] *Duran*, 238 F.3d. at 1273.

Most notably, it implicates the unauthorized practice of law.  Utah law prohibits any individual from practicing law "if that individual . . . is not admitted and licensed to practice law within this state."[167]  The "practice of law" means "representing the interests of another person by informing, counseling, advising, assisting, advocating for, or drafting documents for that person through applying the law and associated legal principles to that person's facts and circumstances."[168]  "The practice of law is not limited to services performed before the courts, but in a larger sense involves counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities."[169]  This Rule does not apply to non-lawyers "[p]roviding general legal information, opinions, or recommendations about possible legal rights, remedies, defenses, procedures, options, or strategies" where it is "not specific advice related to another person's facts or circumstances."[170]

Bramhall acknowledged in his Objection that he "asked [Wagner] to provide assistance to him in this civil suit."[171]  Bramhall's opposition memoranda to Defendants' motions to dismiss and his Objection to Judge Oberg's Report and Recommendation establish that Wagner helped Bramhall draft court filings which apply Bramhall's facts to the law.  As noted by the Tenth Circuit in Bramhall's prior action, Wagner has clearly provided "substantial assistance" to Bramhall.[172]

---

[167] Utah Code Ann. § 78A-9-103.

[168] Utah R. Sup. Ct. 14-802(b)(1).

[169] *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, ¶ 29, 374 P.3d 14 (internal quotation marks and citation omitted).

[170] Utah R. Sup. Ct. 14-802(d)(2).

[171] Dkt. 95 at 5 n.2.

[172] *See Bramhall I*, 2:18-cv-00438-DB, Dkt. 151 at 2–3.

This court will not countenance Wagner's unauthorized practice of law.  If Wagner continues to provide assistance to Bramhall, the court will order both Bramhall and Wagner to show cause why sanctions should not be imposed.  Those sanctions could include dismissal of claims, striking pleadings or briefs, or other sanctions the court deems appropriate under the circumstances.

A second issue the court must address concerns Bramhall's personal and improper comments concerning Judge Oberg in his Objection.  By way of example, Bramhall describes Judge Oberg's recitation of the legal standard for pro se litigants as "delusional or indisputably meritless."[173]  Bramhall accuses Judge Oberg of "taking an advocacy position,"[174] raising issues *sua sponte* and arguing on behalf of the Defendants: "this is a 'non-issue' being raised de novo by Judge Oberg, who is supposed to be taking a neutral position, not advocating for or on behalf of any individual party by raising frivolous de novo issues."[175]  Bramhall also questions Judge Oberg's experience and qualifications, insisting "Judge Oberg has fallen for [Defendants'] ruse. [Which] is understandable, in that she was only 2 years out of law school when Plaintiff was illegally arrested, and has apparently, as an attorney, only experienced the Utah criminal justice system, not the justice system of other states."[176]

Bramhall is entitled in his Objection to note any legal or factual error he believes the court made.  Addressing these issues fulfills the purpose of objecting to a report and

---

[173] Dkt. 95 at 6.

[174] *Id.* at 7.

[175] *Id.* at 14.

[176] *Id.* at 9.

recommendation.[177]  "But to argue that a court has committed an error is one thing; to argue that a court has intentionally committed that error due to an improper motive is quite another."[178]

Federal Rule of Civil Procedure 11 allows the court to sanction an unrepresented party when that party presents a filing to the court "for any improper purpose, such as to harass," after ordering the party to show cause why the filing has not violated Rule 11(b).[179]  The "inclusion of scandalous or indecent matter . . . is itself [a] strong indication that an improper purpose underlies the [filing]."[180]  Bramhall's unsupported accusations concerning Judge Oberg's allegedly improper motives and questions concerning Judge Oberg's qualifications are irrelevant to the legal issues in the Report and Recommendation.  More importantly, his accusations "are scandalous in that they are defamatory and offensive to propriety."[181]

It should be readily apparent to Bramhall that "unsupported accusations of this kind are inappropriate[.]"[182]  This court requires litigants to "comply with . . . Utah Rules of Professional Conduct, and Utah Standards of Professionalism and Civility."[183]  The Utah Court of Appeals recently concluded that "the rules of professional conduct and the associated professional responsibilities govern the conduct of attorneys whether they represent themselves or others."[184]  Utah Rule of Professional Conduct 8.2 provides that "[a] lawyer shall not make a public statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity

---

[177] *See* Fed. R. Civ. P. 72(b)(2).

[178] *Peters v. Pine Meadow Ranch Home Ass'n*, 2007 UT 2, ¶ 7, 151 P.3d 962.

[179] Fed. R. Civ. P. 11(c)(3).

[180] Fed. R. Civ. P. 11, Advisory Committee notes.

[181] *Id.* ¶ 9.

[182] *Id.* ¶¶ 10, 11.

[183] DUCivR 83-1.1(d).

[184] *Bohman Aggregates LLC v. Gilbert*, 2021 UT App. 35, ¶¶ 25–27.

concerning the qualifications or integrity of a judge[.]"[185]  Utah Standard of Professionalism and

Civility 3 provides a "[l]awyer[] shall not, without an adequate factual basis, attribute to . . . the

court improper motives, purpose, or conduct."[186]  Moreover, Standard 1 provides "lawyers shall

treat all other counsel, parties, judges, witnesses, and other participants in all proceedings in a

courteous and dignified manner."[187]

Bramhall's Objection includes a substantial number of allegations and argument that are

inappropriate and violative of these rules of professional conduct and civility.  These arguments

and allegations are unsupported, and entirely improper.  This court has broad discretion to

impose an appropriate sanction "to deter repetition of the conduct or comparable conduct by

others similarly situated."[188]  Sanctions under this Rule may include "nonmonetary

directives,"[189] monetary sanctions,[190] and even dismissal of claims with prejudice.[191]  Future

unsupported and inappropriate arguments or allegations about a member of this court will not be

tolerated.  If Bramhall engages in this inappropriate conduct again, the court will order him to

show cause why sanctions should not be imposed pursuant to Rule 11(c).[192]

---

[185] Utah R. Prof'l Conduct 8.2(a).

[186] Utah Standards of Professionalism & Civility 3.

[187] Utah Standards of Professionalism & Civility 1.

[188] *See King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) (quoting *Cooter & Gel v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990); Fed. R. Civ. P. 11(c)(4)).

[189] Fed. R. Civ. P. 11(c)(4).

[190] Fed. R. Civ. P. 11(c)(4).

[191] *See King*, 899 F.3d at 1149 n.11 (describing situations the Tenth Circuit has upheld dismissal of claims with prejudice as a Rule 11 violation).

[192] *See* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation.").

**CONCLUSION**

For the reasons stated above, Bramhall's Objection[193] to Judge Oberg's Report and Recommendation is SUSTAINED IN PART and OVERRULED IN PART.

Bramhall's Objection to Judge Oberg's Recommendation concerning the Cyprus Defendants' Motion to Dismiss[194] is OVERRULED in its entirety.  The court accepts and adopts Judge Oberg's Recommendation and GRANTS the Cyprus Defendants' Motion to Dismiss. Bramhall's claims against the Cyprus Defendants are DISMISSED WITH PREJUDICE.

Bramhall's Objection to Judge Oberg's Recommendation concerning the County Defendants' Motion to Dismiss is SUSTAINED IN PART and OVERRULED IN PART.  The court accepts and adopts Judge Oberg's Recommendation that the County Defendants' Motion to Dismiss be granted respecting Bramhall's claim under 42 U.S.C. § 1985.  The court further accepts and adopts Judge Oberg's recommendation that the County Defendants' Motion to Dismiss be granted respecting Bramhall's claim under 42 U.S.C. § 1983, except that the court concludes, as explained above, the § 1983 claim survives only as asserted against Defendant Gill.  Accordingly, the County Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.  Bramhall's claim under 42 U.S.C. § 1985 is DISMISSED WITH PREJUDICE in its entirety.  Bramhall's claim under 42 U.S.C. § 1983 is DISMISSED WITH PREJUDICE as asserted against Defendants Salt Lake County District Attorney's Office, Robert N. Parrish, Melanie M. Serassio, Steven C. Gibbons, Nathaniel J. Sanders, Nathan J. Evershed, Chou Chou Collins, Thomas V. Lopresto, II, Craig Stanger, and Jared W. Rasband.  The County

---

[193] Dkt. 95.

[194] Dkt. 85; Dkt. 86.

Defendants' Motion to Dismiss is DENIED as to Bramhall's 42 U.S.C. § 1983 claim against

Defendant Simarjit S. Gill.

SO ORDERED this 30th day of September 2021.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge