Sim Gill (Utah Bar No. 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Bridget K. Romano (Utah Bar No. 6979)
Joshua K. Peterman (Utah Bar No. 10248)
Deputy Salt Lake County District Attorney
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Telephone: 385.468.7700
Email: bromano@slco.org
          jpeterman@slco.org
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EARLE E. aka EARL E. BRAMHALL,<br><br>Plaintiff,<br><br>vs.<br><br>SIMARJIT S. GILL,<br><br>Defendant. | **DEFENDANT SIMARJIT S. GILL'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00477-RJS<br><br>Hon. Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Defendant Simarjit S. Gill ("Defendant Gill"), through counsel and under Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56.1, moves for summary judgment dismissing Plaintiff's Section 1983 claim against Defendant Gill, with prejudice.[1]

**INTRODUCTION AND RELIEF SOUGHT**

This action initially was filed against Cyprus Credit Union, the Salt Lake County District Attorney's Office, and thirteen individuals - including nine deputy district attorneys and elected

---

[1] *See* ECF 102 Order Sustaining in Part and Overruling in Part Plaintiff's Objection to Report and Recommendation.

Salt Lake County District Attorney Sim Gill - for alleged constitutional rights violations arising

out of Plaintiff's prosecution for making a terroristic threat to a bank. On September 30, 2021, the

Court dismissed Plaintiff's claims with prejudice, excepting only a Section 1983 claim against

Defendant Gill individually ("Order"). [2] [ECF 102]. Pertinent here, the sole, remaining claim

alleges Defendant Gill developed and/or enforced an office policy of denying plaintiff of his right

to a speedy trial. *Id.* at pg. 14.

Plaintiff's claim against Defendant Gill fails because: (1) Plaintiff's requested relief is

unavailable; and (2) Defendant Gill is entitled to qualified immunity.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

1.    On or about July 28, 2008, Plaintiff was charged with Aggravated Robbery and

Terroristic Threat. *See* Information Statement attached hereto as Exhibit A.[3]

---

[2] Though unclear on the face of the amended complaint [ECF 29], Plaintiff has clarified his remaining claim is asserted against Defendant Gill in his individual capacity only. [ECF 88, Memorandum in Opposition to County Defendants Motion to Dismiss Amended Complaint, pg. 20].

[3] Following his acquittal, Plaintiff's state court criminal case was expunged and the file was sealed.  As permitted by Utah Code § 77-40-110(3), Utah Third District Court Judge Keith Kelly unsealed the state court file and released the underlying court record for the parties' collective use in "a civil action arising out of the expunged incident . . ." *Id. See* Ruling, attached hereto as Exhibit B. The exhibits referenced herein are pulled directly from that record and the Court can take judicial notice of the same. "[D]istrict court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1171–72 (10th Cir. 1979). "[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Id.* at 1072.

2.     A criminal trial was scheduled for January 6, 7, and 8, 2009. At the final pretrial conference on November 17, 2008, Plaintiff's counsel represented to the trial court evaluations of Plaintiff's mental health were ongoing. *See* Exhibit C, pg. 7.[4]

3.     Later, on December 22, Plaintiff's counsel moved to continue the trial because the mental health evaluation was ongoing, and counsel had "significant" concerns about Plaintiff's competency. *Id.*

4.     The trial was rescheduled for February 10, 11, and 12, 2009, but was vacated when Plaintiff's counsel filed a Petition to Determine Defendant's Competency to Stand Trial. *Id.*

5.     On April 14, 2009, Plaintiff's counsel was permitted to withdraw and conflict counsel was appointed. *Id.* at pg. 8.

6.     On May 11, 2009, the Court found, based on the evaluation of the appointed expert(s), Plaintiff not competent to stand trial, and ordered restoration services. *Id.*

7.     In response, Plaintiff filed various handwritten requests seeking to stay his transport for mental health treatment, to which the trial court responded on June 1, 2009, directing that any motions by Plaintiff had to be signed and filed by counsel. *Id.*

8.     "Undeterred" by the trial court's ruling, Plaintiff continued to file handwritten challenges regarding his transport to the Utah State Hospital for restoration of competency, which delayed his treatment for several months. *Id.* at pg. 8-9.

9.     On January 25, 2010, the trial court found Plaintiff competent based upon communications from the Utah State Hospital. *Id.*

---

[4] Exhibit C is a trial court order that contains a detailed factual history of the criminal case from the filing of criminal charges through December 2011 (a period of approximately 3 ½ years).

10.     A new trial date was set for March 30, 31 and April 1, 2010. *Id.* at pg. 9.

11.     On March 8, 2010, the trial court canceled these dates based on Plaintiff's motion for a continuance. *Id.*

12.     A week later, on March 15, 2010, Plaintiff moved to dismiss his appointed counsel. The trial court denied that motion, and on March 29, 2010, based upon a joint request of counsel, ordered Plaintiff's competency be re-evaluated "primarily because of the difficulties relating to [his counsel's] attempt to provide adequate representation." *Id.*

13.     On May 24, 2010, Plaintiff was again found competent to proceed and a new trial date was set for September 14, 15, and 16. *Id.*

14.     As with the previous trial dates, however, on August 16, 2010, the trial court struck the September trial dates based on concerns expressed by Plaintiff's counsel about his client's competency. *Id.*

15.     Plaintiff then filed several handwritten complaints against his counsel with the trial court and also filed a complaint against him with the Utah State Bar "effectively terminating" his counsel's ability to represent him.[5] *Id.* at pg. 9-10.

16.     On December 20, 2010, new counsel appeared on Plaintiff's behalf, and a trial was set for April 26, 27, 28, and 29, 2011. *Id.* at pg. 10.

17.     On January 31, 2011, Plaintiff's counsel moved to continue the April trial dates, and the case was rescheduled for October 4, 5, 6, and 7, 2011. *Id.*

---

[5] Plaintiff filed hundreds of pages of handwritten motions with the Court throughout the criminal proceedings causing numerous delays. The sheer volume of submissions by Plaintiff renders it impractical to provide all of them to the Court. An example is attached hereto as Exhibit D and is representative of Plaintiff's other filings throughout the proceeding.

18.     On September 16, 2011, Plaintiff submitted a handwritten letter to the Court

requesting, among many other matters, the right to represent himself at trial. *Id.*

19.     Ten days later, on September 26, 2011, the October trial dates were stricken based

on Plaintiff's request for a continuance. *Id.*

20.     On December 6, 2011, Plaintiff moved to dismiss the charges pending against him,

alleging he had been denied his right to a speedy trial. *Id.* at pg. 11.

21.     On December 21, 2011, Judge Robin W. Reese entered Findings of Fact and

Conclusions of Law denying Plaintiff's motion. *See* Exhibit C.

22.     Pertinent here, Judge Reese found*:*

Although by the time this case is tried beginning January 31, 2011 [sic] the case
will have been pending for 3 years and 6 months, almost all of that delay has been
caused by either evaluations and assessments of the Defendant's competency to
stand trial or has been requested by the Defendant and/or Defendant's counsel and
acceded to by the Prosecution.

While the Defendant may have not personally agreed with the efforts to assess his
competency, the Court finds those efforts were appropriate and indeed resulted in
an initial finding by the Court that Mr. Bramhall was not competent to proceed.
Those efforts related to competence to stand trial were initiated by Petition of the
Defendant's then-counsel, Michael A. Peterson which in turn were based upon a
full Neuropsychological Evaluation performed on the Defendant by Dr. Vickie
Gregory.

The Defendant himself delayed his transportation to the Utah State Hospital for
attempts to restore him to competency through his filing of handwritten *pro se*
motions to Stay the Transport to the Utah State Hospital. Once Mr. Bramhall was
transported, the Utah Hospital staff were able to restore him to minimal competence
to proceed and once he was returned to the Adult Detention Center additional
evaluations were done at the request of then defense-attorney Lawrence Sleight.

Those additional competency evaluations were done by Dr. Eric Nielsen, Dr.
Randal Oster, and a third by Dr. Nancy Cohn, all at the request of Mr. Sleight and
based on his concerns relating to ongoing problems working with and
communicating with his client. The State stipulated to those additional evaluations
being conducted.

Additional trial settings not related to the competency evaluations were stricken either directly because of the Defendant's conduct in dismissing his counsel or otherwise causing the withdrawal as counsel of Michael Peterson and Lawrence Sleight, or because of motions filed by the Defendant such as to the request for self-representation.

The Court specifically finds that the State of Utah has not requested any continuances of trial in this matter during the three plus years since the case was first filed. The State's prosecutor has stipulated to other continuances requested by the Defendant or by his counsel, but has not alone caused any of the pre-trial delay in this case.

*Id.* at pgs. 2-3, ¶¶ 2-7.

23.   Based on those findings, Judge Reese concluded, *inter alia,*:

…The Court concludes that balancing the cause of the pretrial delay in this case between the government and the defendant, virtually all of the three and a half years of delay have been caused by the Defendant or his counsel. No argument or facts have been advanced by the Defendant contrary to this conclusion…

Finally, the Defendant has not specifically alleged nor has the Court found that he has suffered prejudice as a result of the pretrial delay in his case. No evidence or even allegation has been made that the Defendant's ability to mount a defense to the charges has been compromised by the delay nor that he has lost access to witnesses essential to his defense.

Thus, under the four-part balancing test established by the United States Supreme Court for determining whether there has been a violation of a criminal defendant's right to a speedy trial, each of those factors weigh in favor of a finding that there has been neither an unreasonable nor unconstitutional delay in bringing this case to trial and the Court denies the Defendant's Motion to Dismiss on that ground.

*Id.* at pgs. 4-5, ¶¶ 2, 4, 5.

24.   Following denial of this motion, Plaintiff's trial was rescheduled for January 30, February 1, 2, and 3, 2012. *Id.* at pg. 6, ¶ 2.

25.   On January 27, 2012, four days before the trial was to commence, Plaintiff filed yet another handwritten motion to have his attorneys removed from the case. *See* Exhibit E.

5

26.     That same day, Plaintiff's counsel moved to have Plaintiff's competency re-evaluated, causing the trial dates to be vacated. *See* Petition for Inquiry into Competency to Proceed, attached hereto as Exhibit F.

27.     At a status conference held on July 23, 2012, the trial court determined Plaintiff was incompetent to stand trial. *See* Findings of Fact, Conclusions of Law, and Order Re: Competency of Defendant and Custody Order, attached hereto as Exhibit G.

28.     On August 28, 2012, the trial court again ordered that Plaintiff be provided necessary evaluation and treatment to restore his competency to stand trial. *See* Order, attached hereto as Exhibit H.

29.     On January 10, 2013, Plaintiff was released to the supervision of pre-trial services to continue his mental health assessment and treatment. *See* Order for Release to Pre-Trial services, attached hereto as Exhibit I.

30.     On August 5, 2013, Plaintiff's counsel requested leave to withdrawal due to a conflict of interest between counsel and Plaintiff under Rule 1.7 of the Utah Rules of Professional Conduct. *See* Motion for Substitution of Conflict Counsel, attached hereto as Exhibit J.

31.     On August 8, 2013, new counsel entered his appearance of counsel for Plaintiff, *see* Appearance of Counsel, attached hereto as Exhibit K.

32.     On November 1, 2013, the trial court denied a Motion to Dismiss that had been filed by Plaintiff's former counsel alleging violations of his right to a speedy trial, specifically finding:

> Although this criminal prosecution has been pending for over five years, a great deal of the delay in the case has been occasioned by the Defendant's own behavior and each time the case has been set for a jury trial the State of Utah represented that it was prepared to proceed with the evidence needed at the trial.

…While more than five years have elapsed since the charges were filed, neither party is compromised in its ability to mount a defense if the Defendant is found to be competent to proceed to trial….

*See* Findings of Fact, Conclusions of Law, and Order re: Defendant's Motion to Dismiss attached hereto as Exhibit L, pg. 2. ¶¶ 1-2.

33.     The trial court further concluded that Plaintiff was not competent to stand trial and ordered that efforts again be made to restore him to competency. *Id.* at pg. 4.

34.     On May 13, 2014, the trial court determined that Plaintiff was competent to stand trial and ordered that he be released from the custody of the Department of Human Services on his own recognizance. *See* Second Amended Order for Release attached hereto as Exhibit M.

35.     Plaintiff's case was once more set for trial September 29 – October 3, 2014; however, on September 8, 2014, Plaintiff's counsel filed a Motion to Continue those dates. *See* Motion to Continue, attached hereto as Exhibit N.

36.     The trial was rescheduled to January 5, 6, 7, 8, and 9, 2015. On November 26, 2014, an unopposed continuance was requested for the benefit of Plaintiff. Specifically, the parties jointly requested a continuance to allow Plaintiff an opportunity to meet the statutory notice requirements for an expert witness he intended to utilize at trial. *See* State's Motion to Continue Trial, attached hereto as Exhibit O.

37.     Plaintiff's case went to trial March 28 - April 4, 2016. That trial resulted in a hung jury and the matter was set for a second trial September 19, 20, and 21, 2016. *See* Minutes, attached hereto as Exhibit P.

38.     On September 6, 2016, Plaintiff requested a continuance of the trial to allow him additional time to prepare his expert. *See* Stipulated Motion to Continue, attached hereto as <u>Exhibit Q.</u>

39.     The second trial went forward on July 17, 18, and 19, 2017, at which Plaintiff was acquitted. *See* Minutes attached hereto as <u>Exhibit R.</u>

<b><u>ARGUMENT</u></b>

**I.      LEGAL STANDARD FOR SUMMARY JUDGMENT.**

"A motion for summary judgment is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998); Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears [the] initial burden to show an absence of evidence to support an essential element of the non-movant's case." *Johnson*, 996 F. Supp. at 1102.

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. (citing *Thomas v. Wichita Coca Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). A party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e). Nor may "a party

. . . rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). And pertinent here, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Salehpoor v. Sahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (quoting *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995)).

      **a.**    **Different Standard When Immunity Defenses Are Raised**.

Because Defendant Gill raises a qualified immunity defense, the initial burden of proof shifts and the onus is on Plaintiff to demonstrate that material, undisputed facts in the record do not support qualified immunity for Defendant Gill's alleged actions or omissions. *See Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001) ("After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff"). Once qualified immunity is asserted, Plaintiff "may not play dog in the manger" and "the record must contain facts that rebut the presumption of the [Defendant Gill's] immunity from suit." *Id.* at 1130.

    **II.**      **DEFENDANT GILL IS ENTITLED TO SUMMARY JUDGMENT.**

The Court previously dismissed the bulk of Plaintiff's amended complaint, leaving a single claim against Defendant Gill for an alleged violation of Plaintiff's right to a speedy trial under the United States Constitution. [ECF 102, pp. 32-33]. As set forth herein, Plaintiff's remaining claim fails as a matter of law.

a.       **Plaintiff's Requested Remedy is Unavailable.**

The right to a speedy trial is found in the Sixth Amendment to the United States Constitution. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…" U.S. Const. Amend. VI.

Plaintiff's requested remedy for this alleged constitutional violation is strictly monetary. [ECF 29, pg. 16]. Monetary relief, however, is not available to remedy a speedy trial claim. Rather, the United States Supreme Court has made clear dismissal of the charges is "the only possible remedy" for an alleged Sixth Amendment violation. *Strunk v. U.S.*, 412 U.S. 434, 440 (1973) (*citing Barker v. Wingo*, 407 U.S. 514, 522 (1972)). Being facially deficient, the remaining claim should be dismissed; Plaintiff taking nothing thereby.

In the nearly fifty years since *Barker* was decided, lower courts consistently have held monetary damages are not an available remedy for Sixth Amendment claims.

> The Court must dismiss Plaintiff's speedy trial claims because the Court cannot provide any relief that would address the injury. Plaintiff is no longer in custody and charges are not pending. Rather, Plaintiff requests compensatory and punitive damages. However, those damages are not available for Plaintiff's Speedy Trial claim. Further, granting a dismissal would not redress the injury because Plaintiff has already been acquitted of the charges. Thus, even assuming Plaintiff articulated viable Speedy Trial claims against non-immune defendants, Plaintiff's injury would not be redressed by a favorable decision.

*Neal v. United States*, No. 1:12-CV-01327-AWI, 2014 WL 172545, at *6 (E.D. Cal. Jan. 15, 2014) (internal citation omitted); s*ee also Quinn v. Roach*, 326 Fed.Appx. 280, 290 (5th Cir. 2009) (after dismissal plaintiff lacks standing to assert Sixth Amendment claim); *Starks v. Moore*, 51 F. Supp. 3d 782, 797 (S.D. Ind. 2014) (monetary damages are not available in post-trial Section 1983 action alleging violation of Sixth Amendment right to speedy trial); *Wooten v. Hayden*, No. 18-3067-SAC, 2021 WL 1210289, at *2 (D. Kan. Mar. 31, 2021) (federal claim for monetary damages due

to denial of speedy trial unavailable); *Batch v. Lauricia*, No. 2:19-CV-01046-CRE, 2021 WL 4086130, at *9 (W.D. Pa. Aug. 16, 2021) (monetary damages are unavailable to a Section 1983 plaintiff alleging a Sixth Amendment speedy trial violation).

This line of reasoning is premised on the fact the Sixth Amendment provides protections only during the time a person stands accused and detaches upon conviction or dismissal. As described by the Seventh Circuit:

> The Speedy Trial Clause applies only to an accused; when charges were dismissed …the defendant lost not only the status of being an accused, he lost the Sixth Amendment's guarantee of a prompt trial. It is scarcely realistic to suppose that a citizen, free from criminal charges, wants or deserves a speedy trial. Once all counts of the indictment were dismissed, the defendant was legally and constitutionally in the same posture as though no charges had been made.

*United States v. Samples*, 713 F.2d 298, 301 (7th Cir. 1983) (internal citation omitted).

United States Supreme Court authority is in accord. When addressing whether a party can appeal the denial of a speedy trial claim prior to a final adjudication of the criminal case, the Supreme Court stated:

> The claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof…In contrast, a central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged.

*United States v. MacDonald*, 435 U.S. 850, 859–60 (1978).

*MacDonald* reaffirms that the fundamental purpose of the Sixth Amendment is to protect a defendant's rights during trial – not provide a post-trial remedy. Defendant Gill has been unable to locate any authority that would support Plaintiff's claim for monetary relief due to a speedy trial violation and his claim should be dismissed with prejudice.

And though the amended complaint alleges a Section 1983 claim against a state actor, courts addressing similar Sixth Amendment claims against federal actors under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) have reached a similar conclusion.[6] As the Supreme Court explained in *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), *Bivens* "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest…"

Resonate here, the Supreme Court has recognized *Bivens* claims only in Fourth, Fifth, and Eighth Amendment cases, and has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). In fact, "*Bivens* has never been extended to provide an alternate remedy to speedy trial violations…" *Rockwell v. Adams*, No. CIV.A. 3:14-9190, 2014 WL 2779009, at *4 (S.D.W. Va. Jun. 19, 2014). In other words, monetary relief for an alleged speedy trial violation is not available under either *Bivens* or Section 1983.

Because money damages are not an available remedy for Plaintiff's Sixth Amendment claim, Defendant Gill is entitled to judgment as a matter of law.

**b.      Plaintiff's Individual Capacity Claim is Barred by Qualified Immunity.**

Plaintiff alleges Defendant Gill intentionally developed a policy to violate his speedy trial rights; or he was grossly negligent in allowing such a policy to develop. [ECF 29, pgs. 10 -11]. Defendant Gill, however, is qualified immune from Plaintiff's alternate claim.

---

[6] "A Bivens suit against a federal agent is the federal equivalent of a suit against State officials under § 1983…Thus, we cite to both Bivens and § 1983 cases as authority." *Springer v. Albin,* 398 Fed.Appx. 427, 435 n. 5 (10th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 254 (2006).

"[Q]ualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Medina*, 252 F.3d at 1127 (citation omitted). This defense "protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). In doing so, the qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When the defense of qualified immunity is raised, Plaintiff must carry a "heavy two-part burden" to demonstrate: "(1) that the defendant's actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct at issue." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996). Failure on either element is fatal to Plaintiff's claim. *See A.M. v. Holmes*, 830 F.3d 1123, 1134-1135 (10th Cir. 2016) ("if plaintiff fails to establish either prong…the defendant prevails on the defense").

Analyzing a qualified immunity defense, the Court possesses discretion to decide which element to address first. *Id.* at 1135. Here, Plaintiff cannot meet the first element (violation of a constitutional right) and therefore, an analysis of the second element is unnecessary. Plaintiff alleges his right to a speedy trial was violated when he was denied a jury trial during a "nearly five

year" period. *See* [ECF 29, pg. 16].[7]  Plaintiff's claim, however, relies on undisputed facts that

belie his assertions, and tilt in Defendant Gill's favor.

Examining whether a Sixth Amendment right to a speedy trial was violated, the Court

should consider the following factors: "(1) the length of the delay, (2) the reason for the delay, (3)

the defendant's assertion of his right, and (4) the prejudice to the defendant." *United States v.*

*Koerber,* 10 F.4th 1083, 1109 (10th Cir. 2021) (citation omitted). Further, consideration of the

factors is a "balancing test, so none of the factors is itself necessary or sufficient to conclude that

the Sixth Amendment speedy trial right has been violated." *United States v. Hicks*, 779 F.3d 1163,

1167 (10th Cir. 2015).

A review of each factor demonstrates no violation of Plaintiff's constitutional right to a

speedy trial and therefore, qualified immunity applies.

### i.      **Length of Delay.**

Although there is no firm rule, a delay approaching one year is considered "presumptively

prejudicial." *Id.* Defendant Gill acknowledges the time between the filing of criminal charges and

Plaintiff's trial was more than one year and therefore, this factor favors Plaintiff.

### ii.      **Reason for Delay.**

The reason for the delay is "especially important" and if Plaintiff's actions "were the

primary cause of the delay, [this factor] weighs heavily against him." *United States v. Larson*, 627

F.3d 1198, 1208 (10th Cir. 2010). What is more, delays attributable to a plaintiff do not weigh

against the government. *Id.*

---

[7] The exact period of time that constitutes this "five years" is unclear, but the length of the
alleged delay is relevant to the Court's analysis of prejudice to Plaintiff as set forth in subsection
iv.

Here, the undisputed record shows Plaintiff is responsible for the delays associated with his case. Plaintiff's initial, criminal trial was scheduled on twelve separate occasions (two of which went forward) and Plaintiff was the direct cause for the trial setting to be vacated nine times. *See* Statement of Facts, ¶¶ 2-4, 10-11, 14, 16-17, 19, 25-26, 35-38. As noted by the state court overseeing Plaintiff's criminal case, the State was prepared to proceed to trial each time it was set. *Id.* at ¶ 32.[8] Only one stipulated continuance could partially be attributed to the State, and even then, its purpose was to benefit Plaintiff and provide him sufficient time to meet an expert disclosure deadline. *Id.* at ¶ 36.

No delay was the product of bad faith, purposeful delay, or other action on the part of the State that would cause this factor to weigh in Plaintiff's favor. During the course of his criminal proceeding, Plaintiff discharged numerous attorneys, requested to represent himself, refused to comply with attempts to restore his competence, filed hundreds of pages of handwritten motions and letters (despite being represented by counsel and after being instructed by the trial court to cease the practice), and otherwise requested or caused the delay.

Additionally, much of the delay can be attributed to Plaintiff's competency. "[A] criminal defendant cannot establish a denial of his Sixth Amendment right to a speedy trial if the reason for the delay is to determine competency." *Marker v. Lathorp*, No. 1:18-CV-00719-JB-LF, 2020 WL 1951593, at *6 (D.N.M. Apr. 23, 2020); *see also Johnson v. United States*, 333 F.2d 371, 374 (10th Cir. 1964) (party cannot complain of the denial of his constitutional right to a speedy trial because

---

[8] The state court's findings during the criminal proceedings should be given "great deference." *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991)

of his confinement in a mental institution for the very purpose of determining his competency to stand trial).

Because, in each instance, the continuance and reason for delay is attributable to Plaintiff, this factor weighs heavily in favor of Defendant Gill.

### iii.    Whether Plaintiff Asserted his Right to a Speedy Trial.

Plaintiff's first formal assertion of his right to a speedy trial was on December 6, 2011. *See* Motion to Dismiss, attached hereto as Exhibit S. By then, and as noted by Plaintiff in the final paragraph of this motion, his case had been pending for "three and a half years".

The United States Court of Appeals for the Tenth Circuit has consistently held that "if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against him." *Hicks*, 779 F.3d at 1168. *see also Koerber*, 10 F.4th at 1110 (requesting continuances and deadline extensions "hardly characteristic of a desire for a speedier process"); *Larson*, 627 F.3d at 1210 (denying request made twenty-six months after his indictment and after the court had granted eight continuances-five of which were requested by defendant); *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) (by the time speedy trial right was asserted, eight continuances had been granted, seven of which were requested by defendant, and approximately seventeen months had passed since his first court appearance); *United States v. Batie,* 433 F.3d 1287, 1292 (10th Cir. 2006) ("persistent requests for continuances…scarcely demonstrate a desire for a speedier process"); *United States v. Margheim*, 770 F.3d 1312, 1328 (10th Cir. 2014) (assertion of the right to a speedy trial is not satisfied merely by moving to dismiss after the delay has already occurred).

Plaintiff's conduct is similar to that found in the aforementioned cases wherein it was determined that this factor weighed "heavily" against the defendants. While Plaintiff did assert his right a speedy trial, the assertion alone is insufficient considering his culpability in the delays. The "burden of showing he desired a speedy trial is not satisfied merely by moving to dismiss after the delay has already occurred." *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012). By the time Plaintiff filed a motion to dismiss on December 6, 2011, he had requested, and been granted six continuances of his trial. *See* Statement of Facts, ¶¶ 2, 4, 11, 14, 17, 19. Additionally, the trial court fully analyzed Plaintiff's motions to dismiss on Sixth Amendment grounds and denied the requests on each occasion. *Id.* at ¶¶ 22, 32.

### iv.    Whether the Delay Prejudiced Plaintiff.

In the Tenth Circuit as elsewhere, a plaintiff bears the burden of demonstrating that they were prejudiced by the delay and failure to do so is "nearly fatal to a speedy trial claim." *Hicks*, 779 F.3d at 1168 (citation omitted). When evaluating the type of prejudice that Plaintiff must demonstrate, the Court must first determine if there has been an "extreme delay." *Toombs* 574 F.3d at 1275. If there has been extreme delay, there is a presumption of prejudice and Plaintiff need not present specific evidence. *Id.*

To constitute "extreme delay," there must be a delay of at least six years. *Hicks*, 779 F.3d at 1168. Plaintiff has alleged a delay of five years, which on its face is less than the required time to constitute extreme delay. Additionally, only delays attributable to the government should be included in this calculation. *Id.* Because, while lengthy, none of the delay was caused by the prosecution, as found by the trial court on several occasions, the delay for purposes of an extreme delay inquiry is effectively zero.

Absent the finding of extreme delay, prejudice to Plaintiff cannot be presumed. Plaintiff "must make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect, which include: (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired." *Id.* at 1169.

Even assuming for purposes of this motion only that Plaintiff can produce some evidence to support the first two interests, he cannot do so for the third. Impairment of a defense is the "most important" of the three interests and if it is not established, it cannot weigh in favor of Plaintiff, even if the first two interests are established. *Toombs* 574 F.3d at 1276 (if defense was not significantly hindered, prejudice factor does not weigh in favor of defendant even if first two interests are assumed).

Plaintiff's first trial resulted in a hung jury, and at the close of his second trial, Plaintiff was acquitted of the charges against him. Without dispute and on the facts already established by way of the state court proceedings, Plaintiff cannot demonstrate that his ability to mount a defense was prejudiced. *See Hinshaw v. United States*, No. 08CV5742, 2010 WL 569948, at *9 (N.D. Ill. Feb. 16, 2010) (no evidence that defense was impaired when defendant was acquitted). Plaintiff's Sixth Amendment rights were fully analyzed and maintained by the trial court. The delays, proximately caused by Plaintiff, did not result in the type of prejudice sufficient to warrant monetary damages, if damages were allowed, or to overcome Defendant Gill's right to qualified immunity.

As set out above and supported by an indisputable record of established facts for which this Court can take judicial notice, Plaintiff cannot satisfy the four-factor test necessary to support

a speedy trial violation. The only factor that weighs in Plaintiff's favor is the first; namely, that the delay was presumptively prejudicial because there was more than a year between the filing of criminal charges and trial. The remaining three factors weigh heavily in favor of the State, and thereby Defendant Gill, and after balancing these factors, Plaintiff cannot establish a violation of his right to a speedy trial under the Sixth Amendment. Because there was no constitutional violation, Defendant Gill is entitled to qualified immunity and summary judgment is appropriate as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendant Gill respectfully request that this Court grant his Motion for Summary Judgment dismissing all claims against him with prejudice.

Dated this 20th day of April 2022.

> Sim Gill
> SALT LAKE COUNTY DISTRICT
> ATTORNEY
>
> */s/ Joshua K. Peterman*
> Joshua K. Peterman
> Deputy District Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of April 2022, a true and correct copy of the

foregoing Motion for Summary Judgment was electronically filed with the clerk of the court

utilizing the CM/ECF system, which automatically sent notification of such filing to the

following:

> Earle E. Bramhall
> 4658 West 3825 South
> West Valley City, Utah 84120

*/s/ Julianne Katherman*
Paralegal